# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

JOSE PADILLA, et al.,         )
                                )
        Plaintiffs,        )    Case No. 2:07-410-HFF-RSC
                                )
        v.                   )
                                )
DONALD H. RUMSFELD, et al.,       )
                                )
        Defendants.     )

## PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
## BY U.S. SECRETARY OF DEFENSE IN HIS OFFICIAL CAPACITY

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................... iii

INTRODUCTION ................................................................................................... 1

SUMMARY OF FACTS ......................................................................................... 1

ARGUMENT

I.      DEFENDANT'S ARGUMENTS SOUND IN MOOTNESS, NOT STANDING ............. 5

II.     PADILLLA HAS STANDING TO SEEK EQUITABLE RELIEF .................................. 6

      A.     Padilla Has An Objectively Reasonable Fear Of Re-Detention .............................. 7

      B.     Padilla Continues To Suffer Collateral Consequences From His Status As An Enemy Combatant ................................................................................................ 10

III.    THE EQUITABLE CLAIMS ARE NOT MOOT ........................................................ 13

      A.     Padilla Continues To Suffer Collateral Consequences From His Continuing Designation As An Enemy Combatant .................................................................. 14

      B.     The Violations Committed By Defendants Are Capable Of Repetition While Evading Review ................................................................................................... 16

      C.     Defendant's Hint Of Voluntary Cessation Does Not Moot The Claims ................ 17

      CONCLUSION ...................................................................................................... 19

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                              <u>Page</u>

*Adarand Constructors, Inc. v. Slater*,
    528 U.S. 216 (2000)............................................................................6, 18, 19

*Adams v. Village of Wesley Chapel*,
    259 Fed. Appx. 545, 548 (4th Cir. 2007)...............................................18

*Bigelow v. Virginia*,
    421 U.S. 809 (1975)................................................................................13

*Boston v. Webb*,
    783 F.2d 1163 (4th Cir.1986) ...........................................................10, 11

*City of Erie v. Pap's A.M.*,
    529 U.S. 277 (2000)................................................................................18

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)...................................................................................8

*Coleman v. Dretke*,
    409 F.3d 665 (5th Cir. 2005) ................................................................12

*Davis v. FEC*,
    128 S. Ct. 2759 (2008)..........................................................................6, 9

*Doe v. Kidd*,
    501 F.3d 348 (4th Cir. 2007) .................................................................19

*Doe v. Pataki*,
    3 F. Supp. 2d 456 (S.D.N.Y. 1998) ......................................................15

*Emery v. Roanoke City Sch. Board*,
    432 F.3d 294 (4th Cir. 2005) ..................................................................7

*Freedom From Religion Foundation, Inc. v. Zielke*,
    845 F.2d 1463 (7th Cir. 1988) ..............................................................13

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
    528 U.S. 167 (2000).............................................................6, 14, 16, 18, 19

*Hamdi v. Rumsfeld*,
    542 U.S. 507 (2004)..............................................................................3, 4

*Honig v. Doe*,
    484 U.S. 305 (1988)...................................................................................................16

*Humane Social v. Babbit*,
    46 F.3d 93 (D.C. Cir. 1995).....................................................................................13

*Kirby v. Siegelman*,
    195 F.3d 1285 (11th Cir. 1999) ...............................................................................12

*Lawrence v. Blackwell*,
    430 F.3d 368 (6th Cir. 2005) ...................................................................................16

*Long Term Care Partners, LLC v. United States*,
    516 F.3d 225 (4th Cir. 2008) .....................................................................................7

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)....................................................................................................7

*N.C. Right to Life, Inc. v. Bartlett*,
    168 F.3d 705 (4th Cir. 1999) ...................................................................................10

*Nakell v. Attorney General of North Carolina*,
    15 F.3d 319 (4th Cir.1994) ................................................................................14, 15

*Neal v. Shimoda*,
    131 F.3d 818 (9th Cir. 1997) ...................................................................................12

*Newdow v. Bush*,
    391 F. Supp. 2d 272 (D.D.C. 2005).........................................................................13

*Padilla v. Bush*,
    233 F. Supp. 2d 564 (S.D.N.Y. 2002).......................................................................2

*Padilla v. Hanft*,
    389 F. Supp. 2d 678 (D.S.C. 2005)...........................................................................4

*Padilla v. Hanft*,
    423 F.3d 386 (4th Cir. 2005) .....................................................................................4

*Padilla v. Hanft*,
    432 F.3d 582 (4th Cir. 2005) ..................................................................4, 10, 11, 17

*Padilla v. Rumsfeld*,
    352 F.3d 695 (2d Cir. 2003).......................................................................................2

*Parents Involved in Community Sch. v. Seattle Sch. District Number 1,*
    127 S. Ct. 2738 (2007)........................................................................................18

*U.S. Parole Commission v. Geraghty,*
    445 U.S. 388 (1980)..........................................................................................14

*Republic Bank & Trust Co. v. Kucan,*
    245 Fed. Appx. 308, 310 (4th Cir. 2007) .........................................................6

*Richmond Medical Ctr. for Women v. Gilmore,*
    55 F. Supp. 2d 441 (E.D. Va. 1999) ...............................................................10

*Roe v. Wade,*
    410 U.S. 113 (1973)..........................................................................................16

*Rumsfeld v. Padilla,*
    542 U.S. 426 (2004)............................................................................................3

*Sadallah v. City of Utica,*
    383 F.3d 34 (2d Cir. 2004) (citations omitted) ...............................................11

*Sibron v. State of New York,*
    392 U.S. 40 (1968)............................................................................................14

*Smith v. Ashcroft,*
    295 F.3d 425 (4th Cir. 2002) ...........................................................................15

*Southern Pac. Terminal Co. v. ICC,*
    219 U.S. 498 (1911)..........................................................................................16

*Super Tire Engineering Co. v. McCorkle,*
    416 U.S. 115 (1974)..........................................................................................14

*Valley Forge Christian College v. Americans United for Separation of Church and State,*
    454 U.S. 464 (1982)..........................................................................................13

*Weller v. Department of Social Services for City of Baltimore,*
    901 F.2d 387 (4th Cir. 1990) ...........................................................................11

*Wisconsin v. Constantineau,*
    400 U.S. 433 (1971)..........................................................................................12

*Zepp v. Rehrmann,*
    79 F.3d 381 (4th Cir. 1996) .............................................................................10

## INTRODUCTION

Jose Padilla seeks declaratory and injunctive relief to prevent his re-detention as an "enemy combatant" and to alleviate the collateral consequences of that ongoing designation. In his official capacity as Secretary of Defense, Defendant Gates ("Defendant") argues that Padilla's recent conviction on criminal charges (now on appeal) and subsequent incarceration in a federal prison means that Padilla no longer has standing to seek an injunction against his re-detention as an enemy combatant or to challenge his designation as an enemy combatant. Yet standing is assessed as of the filing of the civil action, and the action here was filed before Padilla's conviction.

Defendant's arguments sound not in standing but in mootness, and he cannot meet his burden of showing the case is moot. Padilla suffers three continuing injuries-in-fact: an objectively reasonable fear of military re-detention; the collateral consequences stemming from his designated status as an "enemy combatant"; and the severe psychological harm caused by that designated status. Padilla asks for specific relief to remedy a very real and personal harm. Based on the government's specific threats directed to Padilla, his claim is far from speculative. The government has repeatedly sought to keep Padilla from challenging his status as an enemy combatant, and there is no justification to again deny him the opportunity to adjudicate his rights.

## SUMMARY OF FACTS[1]

Jose Padilla is an American citizen. C12.[2] He is not, and never has been, an enemy combatant. C44. On June 9, 2002, Padilla was detained in a civilian jail in New York as a

---

[1] This summary of facts is a revised abbreviated version of the statement of facts provided in plaintiffs' opposition to the individual defendants' motion to dismiss, focusing on the facts most relevant to this motion.

[2] The letter C refers to the Third Amended Complaint; the numbers correspond to particular paragraphs in the complaint.

material witness.  C35.  Court-appointed counsel moved to vacate the material witness warrant,

but two days before the motion could be heard, the Executive decreed Padilla an "enemy

combatant," seized him from the civilian jail, and transported him to the Consolidated Naval

Brig in Charleston, South Carolina ("the Brig").  C37, C41, C2, C43.  Executive officials seized

Padilla without providing any judicial process whatsoever and without granting any notice to

Padilla or his counsel regarding the pending transfer or the reasons underlying it; let alone

providing any opportunity to challenge those charges.

     It would be almost two years until anyone beyond the Brig's doors heard from Padilla

again.  C82.  Though she could not communicate with him, his counsel immediately petitioned

for a writ of habeas corpus in the Southern District of New York.  Responding, the Executive

asserted that any American citizen declared an enemy combatant could be imprisoned

indefinitely without charge and that the court had no authority to evaluate the supposed factual

basis for its decision to imprison a citizen.

     During these years of incommunicado detention, counsel litigated the habeas petition

without client contact.  Though Judge Mukasey held that the Authorization for the Use of

Military Force ("AUMF") permitted the detention without charge of citizens as enemy

combatants, he rebuffed the Executive's efforts to continue the program, ruling that Padilla had

the right of access to counsel and to an opportunity to challenge the factual basis for his military

detention.  *Padilla v. Bush*, 233 F. Supp. 2d 564 (S.D.N.Y. 2002) [hereinafter *Padilla I*].  The

Second Circuit went further, holding that only a clear congressional statement could authorize

the detention without charge of an American citizen.  *Padilla v. Rumsfeld*, 352 F.3d 695 (2d Cir.

2003) [hereinafter *Padilla II*].

     The Supreme Court granted certiorari.  Days before its merits brief was due (and nearly

2

two years after he was seized), the Executive announced it would permit Padilla limited access to attorneys. That access, however, was severely impaired. Attorney-client meetings were recorded with agents present and cameras on. C84. Brig officials told Padilla not to trust his lawyers and threatened him against revealing his mistreatment. C86. When Padilla finally was able to meet with lawyers, Brig officials lessened some of the worse conditions, stepping back from sensory deprivation, returning his Koran, permitting limited access to information and, over the next two years, allowing three twenty-minute telephone calls and one visit from his mother. C92, C96, C99.

The Supreme Court heard argument alongside *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004), which involved the detention of an American citizen seized on a foreign battlefield. The cases were decided the same day. In *Hamdi*, the Court held that the AUMF permitted the military seizure of a citizen found on a foreign battlefield bearing arms for the enemy, but ruled that Hamdi had the right to challenge his detention in proceedings that provided him due process. *Id.* Detention was constitutional only where he was an actual "enemy combatant," and only for the limited purpose of preventing return to the battlefield. *Id.* at 521–22 & n.1. "Certainly," the Court held, "detention for the purpose of interrogation is not authorized." *Id.* at 521. Two dissenters (Justices Scalia and Stevens) went further, holding that no citizen could be detained without charge absent a congressional suspension of habeas corpus. *Id.* at 554 (Scalia, J., dissenting).

The Court dismissed Padilla's habeas petition on other grounds, holding that the petition should have been filed where Padilla was imprisoned, not where he had been seized. *Rumsfeld v. Padilla*, 542 U.S. 426, 451 (2004) [hereinafter *Padilla III*]. Four justices believed jurisdiction was proper and addressed the merits. "At stake in this case is nothing less than the essence of a

free society," they wrote, concluding that "the protracted, incommunicado detention of American citizens arrested in the United States" was unconstitutional.[3]  *Id.* at 465, 464 n.8.  Days later, Padilla filed a new habeas petition in South Carolina.  The Executive responded, alleging for the first time that Padilla had been in Afghanistan during a U.S. attack on the Taliban, armed with an assault weapon and fleeing.  (Before turning to this allegation, the Executive had alleged a "dirty bomb" plot and, when it abandoned that, a gas heat explosion plot.)  With the pleadings closed, Padilla moved for summary judgment, arguing that even if the government's factual averments were true, Padilla's seizure and detention were unconstitutional.  Like the Second Circuit before it, the district court agreed.  *Padilla v. Hanft*, 389 F. Supp. 2d 678 (D.S.C. 2005) [hereinafter *Padilla IV*].

The Fourth Circuit reversed the grant of summary judgment, concluding that the Executive could constitutionally detain citizens, even if seized in the United States, if they had actually carried arms for hostile forces on a foreign battlefield.  It remanded the case to the district court for a hearing on the factual basis for the designation.  *Padilla v. Hanft*, 423 F.3d 386 (4th Cir. 2005) [*Padilla V*]; *Padilla v. Hanft*, 432 F.3d 582, 584 (4th Cir. 2005) [*Padilla VI*]. Padilla petitioned for certiorari.  Judge Luttig has eloquently described what happened next:

> [A] short time after our decision issued on the government's representation that Padilla's military custody was indeed necessary . . . the government determined that it was no longer necessary. . . . Instead, it announced, Padilla would be . . . criminally prosecuted in Florida. . . .

*Padilla VI*, 432 F.3d at 584.  "The indictment," Judge Luttig noted, "made no mention of the acts upon which the government purported to base its military detention of Padilla."  *Id.*  Its timing

---

[3] Taking the opinions in *Hamdi* and *Padilla III* together, it is clear that at least five of the justices considered the military detention of citizens seized in civilian settings in the United States to be unconstitutional, regardless of process: the four dissenters in *Padilla* (who alone addressed the merits) and Justice Scalia, who dissenting in *Hamdi* concluded that citizens could never be military detained absent a suspension of habeas corpus.

was also suspicious: it "came only two business days before the government's brief in response to Padilla's petition for certiorari was due to be filed in the Supreme Court" and only days before the District Court "pursuant to our remand, was to accept briefing on the question whether Padilla had been properly designated an enemy combatant." *Id.* The Executive's actions with regard to Padilla had again "given rise to at least an appearance that the purpose . . . may be to avoid consideration of our decision by the Supreme Court," and that the principles that been offered to justify Padilla's detention were so disposable that they could "yield to expediency with little or no cost." *Id.* at 585, 587.

Padilla was ultimately "criminally prosecuted in Florida for alleged offenses considerably different from, and less serious than, those acts for which the government had militarily detained Padilla." *Id.* at 584. His convictions of those offenses, involving activities in the 1990s directed at non-U.S. interests abroad, are currently on appeal. On November 23, 2005, shortly after the criminal indictment against Padilla was made public, Deputy Solicitor General Gregory Garre informed Padilla's counsel that it was the government's position that the "enemy combatant" designation had not been rescinded and that the government could therefore militarily detain Padilla at any time based on his alleged (and unproven) past acts. C127. In the years that have passed since Padilla's transfer, the government has taken no steps to punish past violations or to prevent future repetition of such abuses. C130. Padilla continues to suffer immediate and ongoing psychological trauma from the possibility of being returned to the brutal conditions at the Brig. C128.

## ARGUMENT

**I.     Defendant's arguments sound in mootness, not standing.**

Defendant Gates[4] argues that standing is lacking because, after this suit was filed, Padilla was convicted of crimes and imprisoned in a civilian jail. *Gates Mot. to Dismiss* at 5. But standing is not concerned with what happens *after* a case is filed. It is an initial inquiry, made at the time the suit is filed: "the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Davis v. FEC*, 128 S. Ct. 2759, 2769 (2008); *see also Republic Bank & Trust Co. v. Kucan*, 245 Fed. Appx. 308, 310 (4th Cir. 2007) ("Whether a plaintiff has standing is determined by considering the relevant facts as they existed at the time the action was commenced.").

Actions that occur after a suit has been filed are relevant to claims of mootness, not standing. Defendant "confuse[s] mootness with standing, and as a result place[s] the burden of proof on the wrong party." *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 221 (2000) (internal citation and quotation marks omitted). "The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000) (internal quotation marks omitted); *see also Adarand Constructors, Inc.*, 528 U.S. at 224 (holding that dismissal for mootness is "justified only if it [is] *absolutely clear* that the litigant no longer ha[s] any need of the judicial protection that it sought") (emphasis added). In this case the burden is on Gates, and, as demonstrated below, *infra* at Part III, Defendant cannot carry that heavy burden.[5]

## II.    Padilla has standing to seek equitable relief.

---

[4] This brief responds to the standing arguments asserted in Defendant Gates's brief, which all Defendants joined in the individual defendants' motion to dismiss. *Mot. Dismiss* at 1.

[5] Defendant Gates also argues that Padilla's claims are not yet ripe; *Gates Mot. Dismiss* at 6 n.6; but there was clearly a ripe claim at the commencement of litigation. The thrust of Defendants' argument is that the original claim was mooted, and a new separate claim is not yet ripe. This argument fails, as the original claim was not mooted and there is no new separate claim.

Defendant has not argued that Padilla did not have standing to seek equitable relief when the suit was filed. It is clear that he did. Padilla met the three Article III prerequisites for equitable relief: "(1) [he] has suffered an injury in fact, (2) the injury is fairly traceable to the defendants' actions, and (3) it is likely, and not merely speculative, that the injury will be redressed by a favorable decision." *Long Term Care Partners, LLC v. United States*, 516 F.3d 225, 230–31 (4th Cir. 2008) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Padilla's continuing designation as an "enemy combatant" has plainly resulted in an injury-in-fact "that is concrete and particularized, and actual or imminent, as opposed to conjectural or hypothetical." *Id.* (citing *Lujan*, 504 U.S. at 560–61). As a direct result of the government's refusal to rescind its designation of Padilla as an "enemy combatant," Padilla suffers three things: (a) an objectively reasonable fear that he will face re-detention as an enemy combatant; (b) continuing collateral effects of that designation, including both serious social stigma and sharply curtailed constitutional rights; and (c) ongoing psychological trauma resulting from the reasonable fear that he will be returned to military custody and the social stigma attached to his designation as an enemy combatant. Any one of those three would alone demonstrate that Padilla "has a sufficient personal stake in the outcome of a dispute to render judicial resolution of it appropriate." *Emery v. Roanoke City Sch. Bd.*, 432 F.3d 294, 298 (4th Cir. 2005) (internal quotations omitted).

### A.    Padilla has an objectively reasonable fear of re-detention.

There is little question that Padilla faced a reasonable fear of re-detention when this civil action was filed in February 2007. Defendant essentially concedes that Padilla faced a "real and immediate threat" of a return to military custody at least until his criminal conviction, insofar as he argues that any threat of re-detention "disappeared *upon* his conviction." *Gates Mot. Dismiss*

7

at 5 (emphasis added). This suit was filed on February 9, 2007, many months before Padilla's

subsequent criminal conviction (August 16, 2007) and sentencing (January 22, 2008).

Defendant's reliance on *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), is thus

unfounded. In *Lyons*, the Court rejected a claim for injunctive relief against a city that had

employed a police chokehold policy because it was unlikely that Lyons would ever be choked

again. *Id.* at 105–07, 109. The Court observed that there was nothing about Lyons that made it

any more likely that he, as opposed to any other citizen of Los Angeles, would be choked in the

future. *Id.* at 111–12. But if the Los Angeles police had seized and choked only Lyons, and then

warned Lyons personally when they let him go that he could be seized and choked at any time—

not because of what he might do in the future, but because of his alleged past acts—he clearly

would have had standing.

Padilla is the only citizen designated an "enemy combatant" by the Executive and seized

in the United States, and the only citizen seized from the civilian justice system to languish in a

military prison. His designation as an "enemy combatant" has not been withdrawn; C42, C132;

making the equitable claims a present-tense (not past-tense) challenge. And he has received,

through his counsel, a personal threat that he is subject to re-detention. As late as November

2005, *after* the government sought to transfer Padilla to civilian custody for criminal prosecution,

the Deputy Solicitor General told Padilla's counsel that the "enemy combatant" designation had

not been rescinded and that the government therefore could militarily re-detain Mr. Padilla at any

time, even after the transfer to civilian custody. C127. While the threat was made just after the

indictment was unsealed, and before the transfer occurred, it was plain enough that the

government could detain Padilla as an "enemy combatant" before his transfer, since that is what

it was already doing. *Cf. Gates Mot. Dismiss* at 5 n.5. The government's threat was directed at

the time after the transfer.  The government warned that it could re-detain Padilla even after his transfer to civilian custody.

That is perfectly consistent with the position the government has taken since then.  It continues to assert, in courts and through official spokesmen, that it has the right to re-detain "enemy combatants" in military prisons even after they have been acquitted or completed their criminal sentences.  The government reiterated this policy most recently when Yasir Hamdan was convicted and sentenced to time in prison.  The Department of Defense (run by Defendant Gates) stated that Hamdan could be re-detained after he had completed his criminal sentence. *See* Josh White, *Plea Deal for Hamdan Had Been Discussed*, Wash. Post, Aug. 10, 2008, at A03 ("Bryan Whitman, a Pentagon spokesman, said it has always been the Defense Department's position that detainees could be held as enemy combatants even after acquittal at military commissions or after serving a prison sentence. 'That's always been on our minds in terms of a scenario we could face,' he said. 'He will serve his time for the conviction and then he will still be an enemy combatant, and as an enemy combatant the process for potential transfer or release will apply.'").  The government had made the same point before the conviction.  *See* Jerry Markon, *Detainee's Trial in Military System Begins Today*, Wash. Post, July 21, 2008, at A03 (quoting John Murphy, a Justice Department lawyer who was on the team prosecuting Hamdan, who said in court, "The government can hold Mr. Hamdan all the way up until the end of hostilities. . . . It could hold him longer if he were convicted and sentenced beyond that in a commission."); *see generally Davis v. FEC*, 128 S. Ct. 2759, 2770 (2008) (considering a periodical article quoting a public statement as evidence that the case was not moot).

When this suit was filed in February 2007, Padilla clearly bore the continuing injury of his status as an "enemy combatant."  That injury included the threat of immediate re-detention in

9

the event of his acquittal, or if the government unilaterally chose to transfer Padilla back to military custody, notwithstanding the criminal trial, just as it had unilaterally decided to transfer Padilla out of military custody to avoid review by the Supreme Court. *See Padilla VI*, 432 F.3d at 585, 587 (noting that government's actions gave "rise to at least an appearance that the purpose . . . may be to avoid consideration of our decision by the Supreme Court," and that the principles offered to justify Padilla's detention could "yield to expediency with little or no cost").[6]

And that threat continues. The fact that Padilla is currently incarcerated in a civilian jail following unrelated convictions (pending on appeal) does not render conjectural the threat of re-detention as an enemy combatant. After all, a civilian jail is exactly where he was on June 9, 2002, when this all began. C35, C42–45.

**B.      Padilla continues to suffer collateral consequences from his status as an enemy combatant.**

Like the objectively reasonable fear of re-detention, the collateral consequences Padilla suffers from the designation are alone sufficient to provide standing to seek equitable relief. The government's refusal to rescind Padilla's designation as an enemy combatant—the factual basis of which has never been adjudicated—carries with it the social stigma of "serious character defects such as dishonesty or immorality" that seriously undermine Padilla's freedom to rebuild his life following his release from prison. *Zepp v. Rehrmann*, 79 F.3d 381, 388 (4th Cir. 1996) (internal quotation marks omitted); *see also Boston v. Webb*, 783 F.2d 1163, 1165–66 (4th Cir.

---

[6] *See generally N.C. Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 711 (4th Cir. 1999) (finding that a plaintiff challenging a state election statute had a reasonable fear of prosecution, in part, because the record did not show that the state officials would refrain from prosecuting violators); *Richmond Med. Ctr. for Women v. Gilmore*, 55 F. Supp. 2d 441, 461 (E.D. Va. 1999) (finding standing where plaintiffs challenged "a criminal law aimed specifically at one group of citizens, the enforcement of which has not been disavowed by the state," and which created an impending injury "in the form of a fear of prosecution and/or a constitutionally-suspect chilling effect").

1986) (recognizing that plaintiff's liberty interest "was surely implicated" by public announcement that he was discharged after failing to disprove allegation of receiving bribe); *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 392–93 (4th Cir. 1990) (noting possibility that there is "protectable liberty interest in one's reputation as a child abuser" because the "stigma of reported child abuse as well as a finding of abuse erodes the family's solidarity internally and impairs the family's ability to function in the community") (internal quotation marks omitted). Contrary to Defendant's assertion, Padilla's convictions of "offenses considerably different from, and less serious than, those acts for which the government had militarily detained Padilla," *Padilla VI*, 432 F.3d at 584; do not negate the distinct harm caused by his status as an enemy combatant. Padilla's convictions—on charges stemming from events of fifteen years ago directed overseas—simply are not equivalent to the stigma imposed by Padilla's status as an enemy combatant based on unproven accusations that he engaged in terrorist activity against his own country.[7]

Moreover, under the very policies challenged in this action, Padilla's designation as an enemy combatant automatically strips him of important Constitutional protections, depriving him of constitutional protections to which he would otherwise be entitled. This designation is thus not merely stigmatizing, but carries with it a liberty interest. *See Boston*, 783 F.2d at 1167 (recognizing a liberty interest even where "the individual right was not a fundamental one of property in continued employment or other entitlement, nor of liberty from forced confinement or other physical restraint"); *see also Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (noting that standing might be proven by "(1) the utterance of a statement sufficiently derogatory

---

[7] Even if the convictions had not been on allegations "considerably different from, and less serious than, those acts for which the government had militarily detained Padilla;" *Padilla VI*, 432 F.3d at 584; it would nonetheless be true that two crimes stigmatize more than one; the stigma of recidivism multiplies the stigma of crime itself.

to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights") (internal quotation marks omitted); *Wisconsin v. Constantineau*, 400 U.S. 433 (1971) (finding plaintiff had standing to challenge statute under which police chief was authorized to post a public notice in all local liquor retail outlets prohibiting the sale of liquor to named individuals who were determined—without notice or hearing—to pose a danger to the community through their drinking); *Neal v. Shimoda*, 131 F.3d 818, 829 (9th Cir. 1997) (describing how inmates designated as "sex offenders" have standing to maintain a request for equitable relief to remove designation because "we can hardly conceive of a state's action bearing more 'stigmatizing consequences' than the labeling of a prison inmate as a sex offender"); *Kirby v. Siegelman*, 195 F.3d 1285, 1290–92 (11th Cir. 1999) (describing how "[a]n inmate who has never been convicted of a sex crime is entitled to due process before the state declares him to be a sex offender"). Thus, the Fifth Circuit held that the designation of plaintiff as a sex offender, even where he was not forced to appear in a state registration, was itself enough to confer standing and constitute a liberty interest. *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005). So too here, where the "enemy combatant" designation remains in place, stigmatizing Padilla and rendering him more vulnerable to deprivations of liberty.

Padilla's standing to seek equitable relief springs from the collateral consequences and the objectively reasonable possibility of re-detention, as described above, not from what Defendant dismisses as "mere mental or emotional harm." *Gates Mot. Dismiss* at 7. The cases Defendant discusses at pages 7–8 in his Motion to Dismiss are thus beside the point. It is worth noting, though, that Defendant points to no case in which a plaintiff suffered psychological harm because of actions directed at him personally. Instead, he points to cases involving citizens or

organizations claiming injury from witnessing—as bystanders—the government's allegedly

unconstitutional behavior. *See, e.g.*, *Valley Forge Christian Coll. v. Ams. United for Separation*

*of Church and State*, 454 U.S. 464, 485 (1982) ("They fail to identify any personal injury

suffered by them *as a consequence* of the alleged constitutional error, other than the

psychological consequence presumably produced by observation of conduct with which one

disagrees."); *Humane Soc. v. Babbitt*, 46 F.3d 93, 97–101 (D.C. Cir. 1995) (finding no standing

for organization that sought to challenge Secretary of Interior's decision to permit the transport

of an Asian elephant from zoo because there was no injury-in-fact arising out of members'

inability to study elephant); *Newdow v. Bush*, 391 F. Supp. 2d 95, 101–08 (D.D.C. 2005)

(dismissing case for lack of standing where plaintiff sought to enjoin inclusion of religious

prayer in Presidential inaugurations).

This is not a case of psychological harm stemming from merely "witnessing conduct with

which one disagrees." *Freedom From Religion Found., Inc. v. Zielke*, 845 F.2d 1463, 1467 (7th

Cir. 1988). Padilla is no bystander. He suffered, and continues to suffer, from the continuing

stigma and very real threat of his re-detention as an enemy combatant. Padilla has clearly

alleged a "personal injury suffered by [him] *as a consequence* of the alleged constitutional

error;" *Valley Forge Christian Coll.*, 454 U.S. at 485–86; and "there can be no doubt concerning

[his] personal stake in the outcome of the controversy." *Bigelow v. Virginia*, 421 U.S. 809, 817

(1975).

## III.    The equitable claims are not moot.

Though Defendant does not invoke mootness, his arguments sound more in mootness

than in standing. Were he to invoke mootness, Defendant would bear "[t]he heavy burden of

persuading the court that the challenged conduct cannot reasonably be expected to start up

again." *Friends of the Earth, Inc.*, 528 U.S. at 189 (internal quotation marks omitted). As a general rule, "'[t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (quoting Henry P. Monaghan, *Constitutional Adjudication: The Who and When*, 82 Yale L.J. 1363, 1384 (1973)). That general rule, however, is subject to several exceptions, three of which are relevant here: (1) where collateral consequences continue to flow from the initial wrong; *Nakell v. Attorney Gen. of North Carolina*, 15 F.3d 319, 322 (4th Cir. 1994); (2) where the underlying wrong is "capable of repetition yet evading review;" *id.*; and (3) where the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time. *Friends of the Earth, Inc.*, 528 U.S. at 173–74. Padilla's claims are not moot, because (1) the collateral consequences surrounding the "enemy combatant" designation remain; (2) the wrongs visited on Padilla are capable of repetition yet evading review; and (3) to the degree Defendant Gates implies that he has voluntarily relinquished the prerogative of re-detaining him, this averment rings hollow in light of the absence of any public declaration of the same, and in light of the government's previous bad faith regarding legal processes and Padilla.

**A.      Padilla continues to suffer collateral consequences from his continuing designation as an "enemy combatant."**

The Supreme Court has recognized that a case is not moot when "the challenged governmental activity in the present case is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties." *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974). These concerns are particularly acute where the government has categorized an individual in some adverse legal manner, such as by criminal conviction; *Sibron v. New York*,

14

392 U.S. 40, 57 (1968); or immigration status; *see Smith v. Ashcroft*, 295 F.3d 425, 428 (4th Cir. 2002) (petitioner's deportation did not moot case challenging constitutionality of deportation proceedings because "there is a possibility he can beneficially unravel his untoward immigration status").[8]

Padilla continues to suffer collateral consequences from his designation as an "enemy combatant," the factual basis of which was never adjudicated. As the only American citizen designated an "enemy combatant," Padilla is branded with a designation that is "likely to carry with it shame, humiliation, ostracism, loss of employment and decreased opportunities for employment, perhaps even physical violence, and a multitude of other adverse consequences." *Doe v. Pataki*, 3 F. Supp. 2d 456, 468 (S.D.N.Y. 1998). In addition to these real consequences— including the prospect of vigilante violence committed in direct response to the governmental designation—Padilla suffers the consequence of being subject to military imprisonment without the constitutional protections that citizens ordinarily enjoy, such as the right to a trial by jury. On the basis of its unilateral designation, the government claimed that Padilla was in effect exempted from Constitutional protections that would apply to any other American citizen.

These consequences are no less real merely because he has recently received a criminal sentence. The threat of physical violence does not disappear at the prison door, any more than shame, humiliation and ostracism. And regardless of the outcome of Padilla's appeal, his sentence will end. The collateral consequences of his designation will accompany him then too, whether in the form of decreased opportunities for employment, physical violence from the public at large, or other consequences. And of course he will be exposed to the Sword of

---

[8] *See also Nakell*, 15 F.3d at 322 (finding a case not moot where the attorney, convicted for contempt, continued to suffer collateral consequences of possible future disciplinary proceedings and possible return of a fine paid despite release from prison).

Damocles that hangs always over his head, the risk that the government will "return to [its] old ways;" *Friends of the Earth, Inc.*, 528 U.S. at 189 (internal quotation marks omitted); and return him to a military prison.  Given the government's stated policy regarding re-detention of those it deems "enemy combatants," and its explicit threat that it will apply that policy directly to Padilla; C127; Padilla's designation as an enemy combatant has a continuing legal effect of asserted military jurisdiction over his person.

### B.      The violations committed by defendants are capable of repetition while evading review.

Mootness is absent not just because of collateral consequences, but also because the wrong complained of here—that the government will reassert its power to detain Padilla as an "enemy combatant"—is "capable of repetition, but evading review." *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 514–15 (1911).  The question is whether the controversy is "*capable* of repetition and not" whether "a recurrence of the dispute was more probable than not." *Honig v. Doe*, 484 U.S. 305, 318 n.6 (1988).[9]  In *Honig*, the respondent, less than a year from turning 21 (at which he would no longer be covered by the statute under which he was suing), no longer resided in the district that had allegedly violated his rights.  Nevertheless, the Court found it just as likely that he would somehow "reenter the California school system" and again suffer an infringement of his rights as it was that "Jane Roe would again both have an unwanted pregnancy and wish to exercise her right to an abortion." *Id.* (citing *Roe v. Wade*, 410 U.S. 113, 125 (1973)); *see also Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir. 2005) (politician's challenge of state's electoral laws not mooted by election, in spite of fact that he had made no plans and issued no statement that he would run again in the future, since "he [was] certainly capable of doing so," and hence "the controversy [was] capable of repetition").  As the

---

[9] In *Honig*, the Supreme Court expressly rejected "demonstrated probability" or "mathematical precision" as the threshold standard, adopting instead the "reasonable expectation" standard. *Id.*

government's own threat and policy make plain, the illegalities alleged here are certainly "capable of repetition."

And, as Judge Luttig suggested, the government itself continues here to try to evade review of the illegalities. The government has repeatedly made strategic decisions to evade judicial review of the basis its unilateral designation of Padilla as an enemy combatant. The defendants caused Padilla to be seized from a civilian jail to avoid having to defend the basis for his detention as a material witness, then denied him all access to counsel for more than two years; C37, C41, C2, C43, C82; insisting that the federal judiciary had to defer unconditionally to an unsubstantiated declaration by Defendant Mobbs as to the basis for Padilla's detention. Only when the Supreme Court granted certiorari did the defendants grant even limited access to counsel; C84; aiming to moot that issue. On remand, Padilla challenged the legal basis for his designation as an enemy combatant, and the case again reached the Supreme Court on a petition for certiorari. Days before its brief in opposition to the petition for certiorari was due—and just before fact-finding was to begin in this Court—the government unsealed an indictment and asked that Padilla be transferred for criminal prosecution, "giv[ing] rise to at least an appearance that the purpose . . . may be to avoid consideration of [the issue] by the Supreme Court" and that the principles that had been offered to justify Padilla's detention were so disposable that they could "yield to expediency with little or no cost." *Padilla VI*, 432 F.3d at 585, 587. Here again the government argues that this Court should not review the challenged actions, making clear that the government will continue to do everything in its power to keep the challenged conduct from judicial review.

**C.     Defendant's hint of voluntary cessation does not moot the claims.**

Defendant has not asserted that he has voluntarily ceased the program of military

detention of citizens, or that he has voluntarily abandoned plans to re-detain Padilla in a military

prison. Insofar as he implies that the government will not re-detain Padilla in a military prison

because Padilla has been sentenced on unrelated criminal charges, that implication falls far short

of meeting his burden of showing effective voluntary cessation.

It is well settled that "a defendant claiming that its voluntary compliance moots a case

bears the formidable burden of showing that it is absolutely clear the allegedly wrongful

behavior could not reasonably be expected to recur." *Friends of the Earth, Inc.*, 528 U.S. at 190.

Because of the defendant's formidable burden of showing voluntary compliance, "there are

circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct

may be too speculative to support standing, but not too speculative to overcome mootness."

*Adarand Constructors, Inc.*, 528 U.S. at 224 (quoting *Friends of the Earth, Inc.*, 528 U.S. at 190)

(holding that the plaintiff's challenge of the constitutionality of a statute giving contract

preferences to "disadvantaged" businesses was not mooted by the plaintiff itself receiving a

designation as "disadvantaged," because the plaintiff's own designation might at some point be

challenged or otherwise subject to redetermination).[10]

---

[10] *See also Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 127 S. Ct. 2738, 2750–51
(2007) (holding that the fact that the city school district had ceased the use of the challenged
"racial tiebreaker" policy while litigation was ongoing did not moot the case, since the district
had "vigorously defend[ed] the constitutionality of its race-based program, and nowhere
suggest[ed] that . . . it [would] not resume using race to assign students," because "[v]oluntary
cessation does not moot a case or controversy unless subsequent events make it absolutely clear
that the allegedly wrongful behavior could not reasonably be expected to recur" [internal
quotation marks omitted]); *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (holding that the
fact that the plaintiff had retired during the course of the litigation that contested the
constitutionality of an ordinance forbidding nude dancing, closing his establishment and not
opening any other nude dancing venue in the town, did not moot the case because the possibility
that one day he "could again decide to operate a nude dancing establishment in Erie" was
sufficient to keep the original controversy alive); *Adams v. Vill. of Wesley Chapel*, 259 Fed.
Appx. 545, 548 (4th Cir. 2007) (noting how under *Friends of the Earth, Inc.*, "standing need not
always be present through time to prevent a case from becoming moot").

Defendant here does not even state that Padilla will not be re-detained in a military prison. Instead, he merely implies that such re-detention is unlikely, at least until Padilla's sentence is overturned or he has completed serving his sentence. That comes nowhere near meeting his "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc.*, 528 U.S. at 190; *see also Doe v. Kidd*, 501 F.3d 348, 354 (4th Cir. 2007) (holding that voluntary cessation did not moot the case and that the defendants had not met their formidable burden where they had not even voluntarily ceased their conduct).

Even if Defendant had stated that Padilla would not be subject to re-detention while serving his sentence, such a statement would fall short of his "formidable burden" or proving that the wrongful behavior could not recur. Padilla's conviction is on appeal, and there is a real possibility that his conviction could be overturned. In *Adarand*, the Court held that where a future appeal of the determination *might* be brought (and where it could change the determination), the case was not moot. *Adarand*, 528 U.S. at 224. Padilla's appeal is already underway, and the possibility that Padilla will prevail on his appeal, only to be seized once again, is at least as great as the possibility that kept the case from becoming moot in *Adarand*.

In any event, the claim that Padilla's incarceration in a civilian facility somehow makes military re-detention speculative is simply not credible on the facts of this case. Padilla was seized from civilian incarceration the first time, and on his transfer back to civilian custody, the government asserted the continuing power to re-detain him in a military prison. C127.

## CONCLUSION

For the reasons set forth above, the motion to dismiss should be DENIED.

19

Respectfully submitted

_____ /s/ _____

Michael P. O'Connell (I.D. #4260)

STIRLING & O'CONNELL
145 King Street, Suite 410
Post Office Box 882
Charleston, SC 29402
Telephone: (843) 577-9890

Jonathan M. Freiman *(pro hac vice)*
Hope R. Metcalf *(pro hac vice)*
National Litigation Project
Allard K. Lowenstein International Human
Rights Clinic
Yale Law School
P.O. Box 208215
New Haven CT 06520-8215
Telephone: (203) 498-4584

OF COUNSEL:
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
New Haven, CT 06510-7001

Dated: November 17, 2008

COUNSEL FOR PLAINTIFFS