IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JOSE PADILLA, et al., ) | |
| ) | |
| Plaintiffs, ) | Case No. 2:07-410-HFF-RSC |
| ) | |
| v. ) | |
| ) | |
| DONALD H. RUMSFELD, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**REPLY IN SUPPORT OF MOTION TO DISMISS BY
UNITED STATES SECRETARY OF DEFENSE
IN HIS OFFICIAL CAPACITY**

**INTRODUCTION**

José Padilla, who is serving sentences of more than seventeen years on terrorism-related charges in the custody of the Bureau of Prisons, seeks an order to prevent the Secretary of Defense from ever returning him to military custody. Plaintiffs assert that the justiciability of this claim turns on the facts that existed when they initially filed this action in February 2007. Plaintiffs did not, however, plead their official-capacity claim against the Secretary at that time, but in May 2008, upon filing their Second Amended Complaint. The justiciability of this claim must, therefore, be analyzed as of that later date. By the time plaintiffs filed the claim whose dismissal is sought in this motion, Padilla had been convicted in civilian court, had been sentenced to seventeen years and four months on those convictions, and had started serving those sentences. As argued in the Secretary's opening memorandum, therefore, plaintiffs' claim against the Secretary presents a question of standing.

Plaintiffs cannot, moreover, show the "real and immediate threat" of injury needed for standing under Article III of the Constitution. Plaintiff is serving a sentence of more than seventeen years in civilian custody, and there is no cognizable "threat" that he might be returned to military custody. Whether the government has the authority, in general, to return a declared enemy combatant to military custody does not establish the existence of any concrete threat that it will do so. Nor does any "social stigma" arising from Padilla's designation as an enemy combatant give the plaintiffs standing to seek an order against ever returning him to military custody.

Plaintiffs' claim against the Secretary in his official capacity should be dismissed with prejudice.

## ARGUMENT

I.  The Justiciability of Plaintiffs' Official-Capacity Claim Against the Secretary Is a Question of Standing, Not Mootness

Plaintiffs glibly assert, in a two-paragraph argument, that justiciability of their claim against the Secretary of Defense must be assessed as of the date this action was initially filed — and, thus, that defendant's arguments "sound in" mootness rather than standing, such that the defendant, rather than the plaintiffs, bears the burden of persuasion on justiciability. See Plaintiffs' Opposition to Motion to Dismiss by U.S. Secretary of Defense in His Official Capacity at 5-6 (docket #107) [hereinafter Pls' Opp.]. Plaintiffs' other arguments in opposition to the Secretary's motion to dismiss are based on that premise. Plaintiffs fail to acknowledge, however, that their official-capacity claim against the Secretary did not exist at the outset of this action, but was pled for the first time nearly 16 months later, in their

2

Second Amended Complaint (docket #78), well after Padilla's conviction and sentencing on criminal charges. Accordingly, the justiciability of this claim presents a question of standing — not mootness — as to which the plaintiffs bear the burden of persuasion. See Miller v. Brown, 462 F.3d 312, 316 (4th Cir. 2006) ("The party attempting to invoke federal jurisdiction bears the burden of establishing standing."); Friends of the Earth, Inc. v. Crown Cent. Petroleum Corp., 95 F.3d 358, 361-62 (5th Cir. 1996) ("Standing is an issue upon which the party invoking federal jurisdiction, the plaintiff, bears the burden of persuasion.").[1]

Although standing is generally assessed as of "the time the action commences," see Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 191 (2000), that rule does not usually apply to a claim that was filed later. As the Supreme Court has said, a "plaintiff must demonstrate standing for each claim he seeks to press." Daimler-Chrysler Corp. v. Cuno, 547 U.S. 332, 352 (2006); see North Carolina Fisheries Ass'n v. Gutierrez, 518 F. Supp. 2d 62, 82 (D.D.C. 2007) ("Standing . . . is determined on a claim-by-claim basis."). Thus, in relation to a claim that was first pled in an amended complaint, standing will normally depend on the facts as they existed when that claim was brought, not when the action commenced. For example, in Dupree v. Prudential Insurance Co. of America, No. 99-8337-Civ., 2007 WL 2263892 (S.D. Fla. Aug. 7, 2007) (Attachment 1

---

[1] In any event, even if plaintiffs had pled their official-capacity claim against the Secretary when this action was initially filed in February 2007, the justiciability of the claim would have presented a question of standing, and plaintiffs would have lacked standing to bring the claim. Padilla was already, at that time, in civilian custody and under trial on criminal charges. Thus, even then, Padilla's return to military custody was at best a "mere possibility." See Halkin v. Helms, 690 F.2d 977, 1005-06 (D.C. Cir. 1982). His subsequent conviction and sentencing, as shown below, rendered any such return yet more speculative and further established his lack of standing.

3

hereto), the court held that a plaintiff lacked standing on claims brought for the first time in a second amended complaint, even if he would have had standing on those claims when the <u>first</u> amended complaint was filed. <u>Id</u>. at *33. Similarly, in <u>Trepanier v. Ryan</u>, No. 00 C 2393, 2003 WL 21209832 (N.D. Ill. May 21, 2003) (Attachment 2 hereto), the court rejected an argument that standing for a claim brought by Plaintiff #2 in an amended complaint turned on the facts as they existed when Plaintiff #1 filed the original complaint. The rule that standing must exist when the complaint is filed, the court held, "does not mean that to bring his claim in this action, [Plaintiff #2] had to have standing at the time [Plaintiff #1] instituted the litigation. Rather, it means that <u>at the time the complaint was amended to add [Plaintiff #2's] claim</u>, he had to have standing." <u>Id</u>. at *6 (emphasis added).[2]

Justiciability as to plaintiffs' official-capacity claim against the Secretary must, therefore, be determined as of when the <u>claim</u> was first filed. When this action was filed in February 2007, no person then serving as the Secretary of Defense was named as a defendant; Donald Rumsfeld, who was named in his individual capacity only, had resigned from that position in November 2006. Not until they filed their motion to amend on December 3, 2007 (docket #61), did plaintiffs even <u>seek</u> to sue the Secretary of Defense in

---

[2] The "relation back" principle, under which compliance with a statute of limitations may turn on the filing of an original complaint, <u>see</u> Fed. R. Civ. P. 15(c), does not apply in determining the question of standing. <u>See</u> <u>Dupree</u>, 2007 WL 2263892, at *33 ("Standing does not 'relate back' to an earlier complaint . . . ."); <u>Doe v. O'Bannon</u>, 91 F.R.D. 442, 447 (E.D. Pa. 1981) ("'[R]elation back' only exists for the purpose of ameliorating the effect of statutory bars to relief and not for the purpose of artificially assisting plaintiffs to fulfill constitutional prerequisites, such as standing."); <u>see also</u> <u>Morlan v. Universal Guar. Life Ins. Co.</u>, 298 F.3d 609, 617 (7th Cir. 2002) ("The only significance of relation back is avoidance of the bar of the statute of limitations".)

4

his official capacity, and the Second Amended Complaint pleading such a claim was not actually filed until May 30, 2008 (docket #78), pursuant to leave of Court granted on April 18, 2008 (docket #71). In the meantime, Padilla had been convicted of his civilian criminal charges on August 16, 2007 (more than three months before plaintiffs moved for leave to amend), and he was sentenced on January 22, 2008 (more than four months before the filing of plaintiffs' claim against the Secretary).

Accordingly, there is no basis for plaintiffs' argument that the justiciability of the subject claim raises a question of mootness. The facts as they existed "when this civil action was filed in February 2007" do not control, and plaintiffs' arguments regarding mootness, and the case law they cite on that concept, are irrelevant. See Pls' Opp. at 7, 13-19. Plaintiffs bear the burden of establishing the justiciability of their claim against the Secretary.

II.     Plaintiffs Lack Standing to Seek Injunctive or
        Declaratory Relief Against the Secretary

To establish the "injury in fact" needed for equitable relief under Article III of the Constitution, a plaintiff must show a "real and immediate threat" of "irreparable injury" due to the challenged conduct. See Los Angeles v. Lyons, 461 U.S. 95, 110-11 (1983). Properly considering the facts as they existed when plaintiffs brought their claim against the Secretary of Defense in his official capacity — that is, after Padilla's conviction and sentencing on criminal charges — plaintiffs lack standing to seek equitable relief against his being redetained by the military. In light of Padilla's conviction, sentencing, and incarceration on criminal charges, there is no "real and immediate threat" that he will again be detained by the military. See id. at 110. Nothing in plaintiffs' opposition establishes such a cognizable

5

threat, nor any "concrete" cognizable injury due to the alleged "collateral consequences" of Padilla's designation as an enemy combatant. See Whitmore v. Arkansas, 495 U.S. 149, 155 (1990); see also Pls' Opp. at 10.

In attempting to establish a justiciable threat of redetention by the military, plaintiffs quote two newspaper articles to the effect that the government claims a "right to re-detain 'enemy combatants' in military prisons even after they have been acquitted or completed their criminal sentences." See Pls' Opp. at 9. That the government asserts the existence of such a right would not, however, pose a "real and immediate threat" of the exercise of such a right, such that Padilla could secure equitable relief against it. Moreover, far from being "acquitted or complet[ing] [his] criminal sentence[ ]," Padilla has only recently begun serving his sentence of seventeen years and four months. Under these circumstances, the government would have no reason to invoke a right to redetain Padilla as an enemy combatant, and any court order against redetaining him militarily would be completely without effect for at least seventeen years.[3]

Plaintiffs also argue that there is a "real and immediate threat" of Padilla's return to military custody because the government transferred him from civilian to military custody once before. See Pls' Opp. at 10. Padilla's current circumstances are very different, however, from those that existed on June 9, 2002, when he was initially taken into military custody. See Third Amended Complaint ¶ 12 (docket #91). At that time, he had been in federal

---

[3] Plaintiffs point out that Padilla has appealed his conviction and sentence. See Pls' Opp. at 10. But the government has also appealed the sentence, such that Padilla could ultimately serve an even longer period of civilian incarceration.

civilian custody for only a month and had not been charged criminally. See id. ¶ 35. In contrast, the government has now invested significant time and resources in trying Padilla on criminal, terrorism-related charges, and has secured a conviction and sentence on those charges. Padilla was transferred from military to civilian custody on January 5, 2006, see id. ¶ 12, and he has been in civilian custody continuously since that time — that is, for nearly three years. There is simply no reason to believe he may be returned to military custody within the foreseeable future.[4]

In relation to the alleged "collateral consequences" of his designation as an enemy combatant, plaintiffs cite a few court decisions to the effect that a "social stigma" may provide a basis to challenge certain government actions as violative of due process rights. See Pls' Opp. at 10-11. All of those cases, however, arose out of situations where plaintiffs were challenging some concrete governmental action, such as termination of employment or removal of a child from parental custody. See Zepp v. Rehrmann, 79 F.3d 381 (4th Cir. 1996) (allegedly coerced resignation); Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990) (removal of child); Boston v. Webb, 783 F.2d 1163 (4th Cir. 1986) (termination of employment). As the Supreme Court has said — in a decision cited in two the cases on which plaintiffs rely — reputation alone is not a constitutionally protected interest; thus, "a 'stigma' to one's reputation," the Court held, is not itself a constitutionally cognizable injury,

---

[4] Should Padilla ever be returned to military custody, he would then have an opportunity to challenge the "factual basis" for his designation as an enemy combatant in a habeas corpus proceeding. See Pls' Opp. at 10; see also Hamdi v. Rumsfeld, 542 U.S. 507, 509 (2004) (holding that "due process demands that a citizen held in the United States as an enemy combatant be given a meaningful opportunity to contest the factual basis for that detention") (emphasis added).

"apart from some more tangible interests such as employment." See Paul v. Davis, 424 U.S. 693, 701 (1976). Given that a social stigma is not, standing alone, a constitutionally protectable interest, it cannot give the plaintiffs standing to seek equitable relief here. Additionally, any purported potential for "vigilante violence" by members of the public based on the continuation of Padilla's status as an enemy combatant is obviously too speculative as a basis for standing. See Pls' Opp. at 15.[5]

Finally, plaintiffs apparently concede that they lack standing to seek equitable relief based on Padilla's "psychological trauma from the 'enemy combatant' designation." See Third Amended Complaint ¶ 3. They now state that their "standing to seek equitable relief springs from the collateral consequences and the objectively reasonable possibility of re-detention . . . not from what Defendant dismisses as 'mere mental or emotional harm.'" See Pls' Opp. at 12. Plaintiffs appear to recognize, therefore, that Padilla's alleged "psychological harm" from knowing that his designation as an enemy combatant "remains in effect," see Third Amended Complaint ¶ 137(k), does not satisfy the constitutional requirement that the injury alleged for standing be "concrete," "objective," and "palpable," rather than merely "abstract" or "subjective." See Whitmore v. Arkansas, 495 U.S. 149, 155 (1990); Bigelow

---

[5] Plaintiffs also argue that Padilla's designation as an enemy combatant, without more, "automatically strips him of important Constitutional protections." See Pls' Opp. at 11. They do not, however, identify any "Constitutional protections" that Padilla is currently denied, aside from the rights that have lawfully been taken from him pursuant to his federal criminal convictions.

v. Virginia, 421 U.S. 809, 816-17 (1975).

## CONCLUSION

Accordingly, plaintiffs' claim against the Secretary of Defense in his official capacity should be dismissed.

        Respectfully submitted,

        GREGORY G. KATSAS
        Assistant Attorney General

        W. WALTER WILKINS
        United States Attorney

By:    s/BARBARA M. BOWENS
        Barbara M. Bowens (I.D. #4004)
        United States Attorney's Office
        1441 Main Street Suite 500
        Columbia, South Carolina 29201

        VINCENT M. GARVEY
        Deputy Branch Director
        Federal Programs Branch

        W. SCOTT SIMPSON (I.D. #9965)
        Senior Trial Counsel

        Federal Programs Branch, Civil Division
        U.S. Department of Justice
        Post Office Box 883
        Washington, D.C. 20044
        Telephone:  (202) 514-3495
        Facsimile:   (202) 616-8470
        E-mail: scott.simpson@usdoj.gov

        COUNSEL FOR UNITED STATES
        SECRETARY OF DEFENSE
        IN HIS OFFICIAL CAPACITY

Dated:  December 23, 2008