## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

JOSE PADILLA, et al.,                          )
                                               )
     Plaintiffs,                         )          Case No. 2:07-410-HFF-RSC
                                               )
     v.                                  )
                                               )
DONALD H. RUMSFELD, et al.,                    )
                                               )
     Defendants.                         )
                                               )

## INDIVIDUAL FEDERAL DEFENDANTS' REPLY TO
## PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    SPECIAL FACTORS BAR THE *BIVENS* REMEDY PLAINTIFFS SEEK. . . . . . . . . . . 1

II.   THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.. . . . . . . . . . . . 10

      A.    Plaintiffs Have Failed To Establish That The Defendants Personally Participated
            In Any Constitutional Violation.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            1.    Padilla's designation and detention as an enemy combatant.. . . . . . . . . . 11

            2.    Padilla's interrogation and treatment during his detention.. . . . . . . . . . . . 14

      B.    The Fourth Circuit's Rejection Of Padilla's Habeas Corpus Petition Is
            Controlling.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      C.    Padilla Has Not Stated Any Violation Of The Right Of Access To Courts, Or Of
            The Eighth Amendment, Or Of The Fifth Amendment Right Against Self-
            Incrimination.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

      D.    Plaintiffs Fail To Allege A Violation Of Any Clearly Established Right.. . . . . . . 21

III.  PADILLA HAS NOT STATED A CLAIM UNDER THE RELIGIOUS FREEDOM
      RESTORATION ACT ("RFRA").. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

IV.   PLAINTIFFS' CLAIMS FOR EQUITABLE RELIEF MUST BE DISMISSED.. . . . . . . 24

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                        <u>Page</u>

*Bell Atlantic Corp. v. Twombly*,
    127 S. Ct. 1955 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13, 14

*Berry v. Atl. Coast Line RR Co.*,
    273 F.2d 572 (4th Cir. 1960). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*Bivens v. Six Unknown Named Agents*,
    403 U.S. 388 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  passim

*Boumediene v. Bush*,
    128 S. Ct. 2229 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

*Busby v. Crown Supply, Inc.*,
    896 F.2d 833 (4th Cir.1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

*Bush v. Lucas*,
    462 U.S. 367 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*Chappell v. Wallace*,
    462 U.S. 296 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3-5

*Christopher v. Harbury*,
    536 U.S. 403 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

*Correctional Services Corp. v. Malesko*,
    534 U.S. 61 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 11

*Doe v. LaDue*,
    514 F.Supp.2d 1131 (D. Minn. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22, 23

*Ex parte Quirin*,
    317 U.S. 1 (1942). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5, 17, 22

*F.D.I.C. v. Meyer,*
    510 U.S. 471 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Goldstein v. Moatz,*
    364 F.3d 205 (4th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Hamdi v. Rumsfeld,*
    542 U.S. 507 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 17, 22

*Hewlett v. Fox,*
    2008 WL 2943257 (D.S.C. July 30, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hicks v. James,*
    255 Fed. Appx. 744 (4th Cir. July 17, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hydrick v. Hunter,*
    500 F.3d 978 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Idaho v. Coeur d'Alene Tribe of Idaho,*
    521 U.S. 261 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Iraq and Afghanistan Detainees Litigation,*
    479 F. Supp. 2d 85 (D.D.C. 2007),
    *appeal docketed sub nom.*, *Ali v. Rumsfeld*, No. 07-5178
    (D.C. Cir. May 31, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Iqbal v. Hasty,*
    490 F.3d 143 (2d Cir. 2007),
    *cert. granted*, 128 S. Ct. 2931 (Jun. 16, 2008) (No. 07-1015). . . . . . . . . . . . . . . . . . . 4

*Johnson v. Eisentrager,*
    339 U.S. 763 (1950). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 15

*Judicial Watch, Inc. v. Rossotti,*
    317 F.3d 401 (4th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Kirby v. City of Elizabeth, N.C.,*
    388 F.3d 440 (4th Cir. 2004), *cert. denied*, 547 U.S. 1187 (2006). . . . . . . . . . . . . 24, 25

*Korb v. Lehman,*
    919 F.2d 243 (4th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Lewis v. Casey*,
 518 U.S. 343 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Lovelace v. Lee*,
 472 F.3d 174 (4th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*Madison v. Riter*,
 355 F.3d 310 (4th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Mitchell v. Forsyth*,
 472 U.S. 511 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Munaf v. Green*,
 128 S. Ct. 2207 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*National Archives and Records Admin. v. Favish*,
 541 U.S. 157 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Northern Ind. Gun & Outdoor Shows, Inc. v. City of So. Bend*,
 163 F.3d 449 (7th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Padilla v. Hanft ("Padilla I")*,
 389 F. Supp. 2d 678 (D.S.C. 2005), *rev'd*, 423 F.3d 386 (4th Cir. 2005),
 *cert. denied*, 547 U.S. 1062 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Padilla v. Hanft ("Padilla II")*,
 423 F.3d 386 (4th Cir. 2005), *cert. denied*, 547 U.S. 1062 (2006). . . . . . . . . . . . . passim

*Padilla v. Hanft*,
 432 F.3d 582 (4th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Padilla v. Hanft*,
 547 U.S. 1062 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Padilla v. Hanft*,
 No. 04-2221-HFF-RSC (D. S.C.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Ridpath v. Bd. of Governors Marshall Univ.*,
 447 F.3d 292 (4th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Robbins v. Oklahoma*,
 519 F.3d 1242 (10th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Sales v. Grant,*
      158 F.3d 768 (4th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Sanchez-Espinoza v. Reagan,*
      770 F.2d  202 (D.C. Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Schneider v. Kissinger,*
      412 F.3d 190 (D.C. Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Schweiker v. Chilicky,*
      487 U.S. 412 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Swentek v. US Air, Inc.,*
      830 F.2d 552 (4th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Talkington v. Atria Reclamelucifers Fabrieken BV,*
      152 F.3d 254 (4th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Totten v. United States,*
      92 U.S. 105 (1875). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Trulock v. Freeh,*
      275 F.3d 391 (4th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 14

*United States v. Stanley,*
      483 U.S. 669 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4- 6

*United States v. Verdugo-Urquidez,*
      494 U.S. 259 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Vincent,*
      167 F.3d 428 (8th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Weinberger v. Tucker,*
      510 F.3d 486 (4th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Wilkie v. Robbins,*
      127 S. Ct. 2588 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

*Wilson v. Libby,*
      498 F. Supp. 2d 74 (D.D.C. 2007), *aff'd,* 535 F.3d 697 (D.C. Cir. 2008). . . . . . . . . . . . . 6

*Wilson v. Libby,*
      535 F.3d 697 (D.C. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Young v. City of Mount Ranier*,
    238 F.3d 567 (4th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16, 17


<u>Statutes</u>

Non-Detention Act,
    18 U.S.C. § 4001(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

Religious Freedom Restoration Act,
    42 U.S.C. § 2000bb *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23-24


<u>Other</u>

Restatement (Second) of Judgments § 13 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

## INTRODUCTION

Plaintiffs ask this Court to create a *Bivens* remedy for a designated enemy combatant against various federal officials, ranging from unnamed U.S. soldiers to the former Secretary of Defense, that would intrude in unprecedented fashion into the President's authority in the areas of war-powers, national security, and foreign policy. In addition, Plaintiffs fail to show that there is any clearly established factual or legal basis to hold any of the named Defendants personally liable for the President's determination that Plaintiff Jose Padilla was an enemy combatant against the United States and should have been detained militarily as such, or to hold any of the Defendants personally liable for the consequences of that determination.[1]

## ARGUMENT

### I.     SPECIAL FACTORS BAR THE *BIVENS* REMEDY PLAINTIFFS SEEK.

In Plaintiffs' view, the Supreme Court's decision in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), authorized a cause of action that may be invoked as a matter of course whenever a person who claims federal officials violated his or her constitutional rights lacks another remedy. *See* Opp. at 14-16. Furthermore, Plaintiffs say a *Bivens* remedy may be denied only when one of three specific "special factors" is present. *Id.* at 16. Plaintiffs are wrong in both respects. The Supreme Court has recognized that a plaintiff alleging a constitutional violation has no general right to a *Bivens* remedy. *Wilkie v. Robbins*, 127 S. Ct. 2588, 2597 (2007); *Judicial Watch, Inc. v. Rossotti*, 317 F.3d 401, 409 (4th Cir. 2003) (recognizing that "[i]n the more than thirty years since *Bivens*, the [Supreme] Court has been very hesitant to imply other private actions for money

---

[1]  Plaintiffs have withdrawn all claims asserted against Defendant Gates in his individual capacity, *see* Plaintiffs' Opposition to Motion to Dismiss ("Opp.") at 57 n.51, and therefore, all such claims should be dismissed.

damages.").  In fact, the Supreme Court has "in most instances . . . found a *Bivens* remedy unjustified." *Wilkie*, 127 S. Ct. at 2597.  The Court has explained that because the power to create a new constitutional-tort cause of action is "not expressly authorized by statute," it inherently raises separation-of-powers concerns and therefore must be exercised with great caution, if at all. *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 66-70 (2001).  Moreover, the Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Id.* at 68.  In so holding, the Supreme Court has determined that a wide range of factors may make it inappropriate for federal courts to create a *Bivens* remedy in a particular context,[2] and that such factors bar the creation of such a remedy *even where the plaintiff has no alternative statutory remedy available.  See Wilkie*, 127 S. Ct. at 2598 ("even in the absence of an alternative [existing process to protect a constitutional interest], a *Bivens* remedy is a subject of judgment"); *United States v. Stanley*, 483 U.S. 669, 683 (1987) ("[I]t is irrelevant to a 'special factors' analysis whether the laws currently on the books afford Stanley . . . an 'adequate' federal remedy for his injuries").[3] Accordingly, courts have repeatedly rejected *Bivens* claims that raise the type of separation-of-powers concerns implicated by this lawsuit.  *See Stanley*, 483 U.S. at 683; *Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 209 (D.C. Cir. 1985).

---

[2]  Thus, Plaintiffs' repeated characterization of particular special factors identified here as "novel" or "new," *see*, *e.g.*, Opp. at 19, even were it correct, is immaterial to the analysis.

[3]  In any event, it is not at all clear that Padilla is without remedies as to all claims asserted in this litigation.  Padilla had and pursued a habeas remedy with respect to his enemy combatant designation.  While the possibility of injunctive relief through habeas does not by itself foreclose a *Bivens* remedy for damages, *see* Opp. at 16 n. 9, the availability of a remedy that provided some degree of relief – whether or not Plaintiffs subjectively view that relief as adequate or complete – is a factor that counsels against creating a *Bivens* remedy.  *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988).  And to the extent Plaintiffs allege assault or other state law torts, remedies other than *Bivens* might be available.  *Cf. Wilkie* 127 S. Ct. at 2600 (noting that availability of administrative and judicial process, including state tort claims, to vindicate plaintiff's claims gave plaintiff "no intuitively meritorious case for recognizing a new constitutional cause of action").

Beyond these fundamental deficiencies, the Defendants have identified a number of factors that counsel against creating the *Bivens* remedy Plaintiffs seek, including: interference with war-making powers; and the national security and foreign relations implications of providing a damages remedy to a designated enemy combatant. *See* MTD at 13-25. Plaintiffs' criticisms of these factors miss the mark. In Plaintiffs' view, each factor should be considered in isolation to determine if it alone is sufficient to stay the Court's hand in this matter. *See* Opp. at 16-26. Plaintiffs are wrong because even if a given factor is insufficient in itself to preclude a *Bivens* remedy, special factors are also considered in the aggregate. *See Chappell v. Wallace*, 462 U.S. 296, 304 (1983) (finding the "unique disciplinary structure of the military establishment and Congress' activity in the field" "[t]aken together" were special factors barring *Bivens* remedy). Plaintiffs offer no argument concerning the aggregate value of the special factors identified by the Defendants, and for this reason alone their special factors analysis is flawed and should be rejected. And in all events, Plaintiffs' individual criticisms of these special factors fall short.

**1. Recognizing a *Bivens* cause of action in this specific context will interfere with core war-making functions.** Plaintiffs do not dispute that the power to identify, detain, and interrogate individuals like Padilla, who the President determined aligned themselves with declared enemies of the United States and took up arms against this country, is essential to the exercise of constitutionally and congressionally delegated war powers.[4] Instead Plaintiffs suggest that the Supreme Court has

---

[4] Plaintiffs' conclusory claim that the President's actions towards Padilla were "contrary to the will of Congress, as expressed in the Non-Detention Act, 18 U.S.C. § 4001(a)," *see* Opp. at 20 n.11, is inexplicable given that when the Fourth Circuit rejected Padilla's habeas petition it also necessarily rejected the argument that his detention violated the Non-Detention Act. *See Padilla v. Hanft* ("*Padilla I*"), 389 F. Supp. 2d 678, 688-90 (D.S.C. 2005), *rev'd*, 423 F.3d 386 (4th Cir. 2005) ("*Padilla II*"), *cert. denied*, 547 U.S. 1062 (2006). Moreover, in *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004), a majority of the Supreme Court recognized that detention, pursuant to the Authorization for Use of Military Force Joint Resolution, of a U.S. citizen designated as an enemy combatant does not violate the Non-Detention Act. *See id.* at 517 (plurality opinion); *id.* at 579-99 (Thomas, J.,

3

rejected in some blanket way the argument that courts should refrain from interfering with this core political branch function during wartime, such that this Court should imply a *Bivens* remedy here. *See* Opp. at 19-20 (citing *Hamdi*, 542 U.S. at 507 and *Boumediene v. Bush*, 128 S. Ct. 2229 (2008)). *Hamdi* and *Boumediene*, however, both involved petitions for habeas corpus, a cause of action enshrined in the Constitution itself and asserted against government officials in their official capacity (*i.e.*, the U.S. government) to secure a person's release from allegedly unlawful custody. Moreover, the Supreme Court has recognized that even a statutory habeas remedy may be precluded by "sensitive foreign policy issues." *See Munaf v. Green*, 128 S. Ct. 2207, 2220-2225 (2008). In any event, in neither *Hamdi* nor *Boumediene* was the Court asked to create a constitutional damages remedy against an individual federal official – the remedy Plaintiffs seek here and what the special factors doctrine addresses.[5]

Plaintiffs claim that the Supreme Court decisions in *Stanley* and *Chappell* are irrelevant for two reasons: 1) Padilla is a civilian, not a member of the armed forces; and 2) he was seized and detained in the United States, not on a foreign battlefield. *See* Opp. at 18-19, 24. Plaintiffs are wrong in both respects. As a preliminary matter, while the Court in *Stanley* and *Chappell* discussed the impact of an implied cause of action on the military chain of command, in both cases the Court considered more broadly separation-of-powers concerns. *See Stanley*, 483 U.S. at 683; *Chappell*, 462 U.S. at 302-04. In any event, suits by designated enemies of the United States against those involved in making decisions on the conduct of war against such enemies are at least as – if not more

---

dissenting).

[5] Nor is Plaintiffs' argument saved by reliance on the Second Circuit's decision in *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007), *cert. granted*, 128 S. Ct. 2931 (Jun. 16, 2008) (No. 07-1015), which did not even address special factors. The issue in *Iqbal* was whether the particular constitutional rights claimed by the plaintiffs were clearly established. *Id.* at 159-60.

4

– disruptive to military operations as suits by servicemembers, such as those addressed in *Stanley* and *Chappell*. *See Johnson v. Eisentrager*, 339 U.S. 763, 779 (1950)("It would be difficult to devise more effective fettering of a field commander than to allow the very enemies he is ordered to reduce to submission to call him to account in his own civil courts. . ."). And with respect to the locus of Padilla's seizure, Plaintiffs ignore that much of the evidence relied upon to designate Padilla an enemy combatant concerned his activities on a foreign battlefield. That evidence indicated that Padilla was "armed and present in a combat zone [Afghanistan] during armed conflict between al Qaeda/Taliban forces and the armed forces of the United States." *Padilla II*, 423 F.3d at 390. There was also evidence that he met with an al Qaeda operative in Pakistan and accepted an al Qaeda mission to commit terrorists acts in the United States. *Id.* Thus, to the extent Plaintiffs seek to use this suit as a means to litigate the factual basis for Padilla's designation, military officials may well have to be brought to court from combat or related operations to testify regarding evidence and sources in countries involved in ongoing hostilities. This would also be true to the extent that Plaintiffs seek to use this suit to second-guess the decision to interrogate Padilla, who was believed to have intelligence relevant to the military struggle against al Qaeda. Thus, the prospect of diverting the time and attention from the "military offensive" to the "legal defensive," *Johnson*, 339 U.S. at 779, is very real. And in any event, detaining enemy combatants captured on American soil is itself an essential element of the President's warmaking powers, *see, e.g.*, *Ex parte Quirin*, 317 U.S. 1 (1942), and would obviously be undermined by the novel *Bivens* claim that Plaintiffs here seek to impose.[6]

---

[6] Plaintiffs also suggest, in a somewhat facile manner, that because Padilla denies he is an "enemy," no special factors inhere in this case. *See* Opp. at 24. Contrary to Plaintiffs' claim, the issue for special factors purposes is *not* whether Padilla's "enemy" status will necessarily be at issue but whether, more broadly, recognizing a cause of action for this class of cases – suits by those the President has determined to be enemy combatants for their designation, interrogation, and treatment

5

**2.  Recognizing a *Bivens* action in the context of designated enemy combatants presents national security and foreign policy concerns**.  Contrary to Plaintiffs' assertions, *see* Opp. at 16-17, Defendants have not argued that Congress explicitly precluded the *Bivens* claims asserted in this case by passing legislation addressing the treatment of military detainees.  Rather, Defendants have shown that, given the potential impact of creating a personal-capacity damages action for those the President determines are enemy combatants, Congress, not the Judiciary, should decide whether to create such a claim.  *See Stanley*, 483 U.S. at 682-83.  This is because litigating the extremely sensitive matters involved in the President's decision to designate an enemy combatant raises serious national security concerns, implicating critical policy judgments best left to Congress.  *See Bush v. Lucas*, 462 U.S. 367, 390 (1983) ("[W]e decline 'to create a new substantive legal liability without legislative aid and as at the common law' because we are convinced that Congress is in a better position to decide whether or not the public interest would be served by creating it.") (internal citation omitted).[7]  The fact that Congress has passed legislation addressing the treatment of military detainees without including a private damages action is one of the considerations – within the wide range of factors that may be considered by the Court – that makes it inappropriate for this Court to

---

– would disrupt core war-making functions.  The plaintiffs in *In re Iraq and Afghanistan Detainees Litigation*, claiming they were innocent civilians who never engaged in any hostilities against the United States, brought *Bivens* claims against military and civilian personnel who were allegedly responsible for their torture and abuse during confinement.  479 F. Supp. 2d 85, 88 & n.1 (D.D.C. 2007), *appeal docketed sub nom*., *Ali v. Rumsfeld*, No. 07-5178 (D.C. Cir. May 31, 2007).  Nonetheless, the court there, taking the plaintiffs' claims of innocence as true for purposes of the defendants' motion to dismiss, found that "considerations of institutional competence" precluded creation of the *Bivens* remedy they sought.  *Id.* at 106-07.

[7]  *See also Wilson v. Libby*, 498 F. Supp. 2d 74, 83-96 (D.D.C. 2007) (refusing to create *Bivens* remedy for alleged retaliatory disclosure of CIA operative's covert status because of separation-of-powers and justiciability concerns), *aff'd*, 535 F.3d 697 (D.C. Cir. 2008).

create a *Bivens* remedy in this context. *See* MTD at 13-25; *cf. Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 280 (1997) ("The range of concerns to be considered in answering th[e] inquiry . . . [of] . . . whether there are 'special factors counseling hesitation' [in *Bivens* cases] . . . is broad.") (Kennedy, J., joined by Rehnquist, C.J.) (citations omitted).

Plaintiffs do not really dispute that national security concerns are implicated by the *Bivens* action they propose. Indeed, they make much over whether there was sufficient factual foundation in classified intelligence reports about Padilla's al Qaeda activities to warrant his designation. *See* Opp. at 40. Because this litigation is plainly intended in significant part to focus on and challenge the government's intelligence gathering in the armed conflict against al Qaeda, there is no question that it presents clear and substantial national security concerns.[8]  Rather than acknowledge those concerns, Plaintiffs attempt merely to discount them, arguing that they should be addressed by invocation of the state-secrets privilege. *See id.* at 22-23. The bar to litigation set by the special factors doctrine, however, is far lower than the bar set by the state-secrets privilege. This is because special factors addresses the fundamental question of whether the Judicial Branch should affirmatively create an implied cause of action, while the state-secrets doctrine addresses the secondary question of whether the Judicial Branch may adjudicate even an *express* cause of action created by Congress; this is in part why a claim of state-secrets must be asserted by the head of the

---

[8]    It is for this reason that Plaintiffs' assertion that "[t]he Executive Branch itself has publicized, and permitted to be exposed in public court proceedings, the manner of Padilla's seizure and the role of various Executive branch officers," Opp. at 23, is inapposite. The national security concerns implicated by Plaintiffs' *Bivens* claims extend far beyond the manner in which Padilla was seized and the role played by various Executive Branch officers in that seizure. For example, Plaintiffs cite nothing establishing that the government has publicized or permitted to be exposed in public detailed information concerning the intelligence sources and the methods of gathering and analyzing intelligence that provided the facts that were considered in determining whether Padilla should be designated an enemy combatant.

agency that controls the information after personal consideration. Whereas the state-secrets doctrine is concerned principally with preventing the disclosure of classified information, the special factors doctrine is concerned with preserving the role of Congress in enacting causes of action, shielding Executive Branch officials from unwarranted judicially-created liability, and limiting separation-of-powers concerns that arise from judicial second-guessing of actions committed by the Constitution to the Executive or Congress. *See Wilson v. Libby*, 535 F.3d 697, 710 (D.C. Cir. 2008) ("Here, although *Totten* [*v. United States*, 92 U.S. 105 (1875)] does not bar the suit, the concerns justifying the *Totten* [justiciability] doctrine provide further support for our decision that a *Bivens* cause of action is not warranted."). Thus, whether or not state-secrets could be invoked does not control whether special factors preclude suit in the first instance.

In *Padilla II*, the Fourth Circuit specifically recognized the national security implications of Padilla's designation and detention and the need to minimize separation-of-powers concerns that would arise from judicial second-guessing of that designation and detention. 423 F.3d at 394-95. The Circuit also recognized the need for the Judicial Branch to defer to the President's determination that Padilla's detention was "necessary and appropriate in the interest of national security." *Id.* at 395. In his habeas petition, Padilla argued, and the district court held, that his military detention was "neither necessary nor appropriate" because he was amenable to criminal prosecution. *Id.* at 394. The Fourth Circuit rejected this argument as "effectively imposing upon the President the equivalent of a least-restrictive-means test," and stated further that

> [t]o subject to such exacting scrutiny the President's determination that criminal prosecution would not adequately protect the Nation's security at a very minimum *fails to accord the President the deference that is his when he acts pursuant to a broad delegation of authority from Congress, such as the AUMF.*

*Id.* at 395 (emphasis added).

Nothing in *Mitchell v. Forsyth*, 472 U.S. 511 (1985) forecloses the consideration of national security concerns as a factor that counsels against a *Bivens* remedy. *Mitchell* contains no discussion of the special factors doctrine and involves a markedly different context. The defendant official in *Mitchell*, a former Attorney General, sought an absolute "blanket immunization of his performance of [all] 'national security function[s].'" *Id.* at 520-21. Here, the Defendants have not sought any form of absolute immunity or even suggested that the special factors doctrine controls in every action that could be considered related to national security.[9] Rather, they have argued that there are obvious and significant national security concerns inherent in this special context, in which Plaintiffs seek to subject federal officers, soldiers, and other officials to personal liability for decisions regarding the designation, detention and interrogation of an enemy combatant. The Defendants have shown that the presence of national security concerns in this case is one of several factors that, in isolation or in the aggregate, counsel against creating the *Bivens* remedy Plaintiffs' seek. *See, e.g., Schneider v. Kissinger*, 412 F.3d 190, 196 (D.C. Cir. 2005) ("Unlike the executive, the judiciary has no covert agents, no intelligence sources, and no policy advisers . . . [I]t is within the role of the executive to acquire and exercise the expertise of protecting national security. It is not within the role of the courts to second-guess executive judgments made in furtherance of that branch's proper role.") (quotation omitted).

Plaintiffs' argument that the claims presented do not implicate foreign relations concerns because "this case involves claims about what American officials did to an American citizen in

---

[9] The absolute immunity sought in *Mitchell* would have applied to the statutory cause of action asserted in that case. *See* 472 U.S. at 515. Here, the Defendants' argument is limited to the implied cause of action that Plaintiffs ask this Court to create.

America," *see* Opp. at 24, is myopic and wrong. Foreign governments clearly have an interest in the manner in which alleged associates of al Qaeda or any other foreign terrorist organization are identified, detained, and interrogated by the United States. That is especially true here, given that Padilla has been convicted of conspiracy to kill, kidnap, maim, or injure persons in a foreign country. *See generally* Docket for Case #: 0:04-cr-60001-MGC, *USA v. Adham Amin Hassoun, Kifah Wael Jayyousi, and Jose Padilla*, at Number 1193 - Verdict. In short, implying a remedy in this context is fraught with the separation-of-powers concerns that make Congress, not the Judiciary, the appropriate branch to determine the existence of any remedy.

## II.    THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

### A.    Plaintiffs Have Failed To Establish That The Defendants Personally Participated In Any Constitutional Violation.

As Defendants have shown, MTD at 27-38, Plaintiffs fail to satisfy the threshold requirement of sufficiently alleging each Defendant's personal participation in any of the claimed constitutional violations. In relying on general concepts of tort liability, Plaintiffs overlook the most basic principle of qualified immunity jurisprudence – that *Bivens* liability is "personal, based upon *each* defendant's *own* constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (emphasis added). Plaintiffs instead claim there are three "categories" of *Bivens* liability: direct participation in a constitutional violation; encouraging a third party to take unconstitutional actions; and deliberate indifference permitting constitutional violations to continue, *see* Opp. at 27-28, and that they pled "each ... type[] of causation." *Id*. at 28. As is clear from their Opposition, however, Plaintiffs rely on a "set in motion" theory,[10] and claim that all they are required to plead under this theory are

---

[10]    *See, e.g.*, Opp. at 28 ("Rumsfeld set in motion the alleged violations..."), 32 ("Haynes set in motion..."), 34 ("Wolfowitz set in motion..."), 35-36 (same), 38 (same).

allegations giving rise to an inference that each Defendant "set in motion" acts "that would lead to constitutional injury."[11]  *Id*.  Under this unlimited theory, a defendant's personal liability can be established by virtually any conduct that can be linked, however loosely or far removed, to an eventual violation allegedly committed by others.  The governing case law, however, holds that personal exposure of federal officials is not nearly so unbounded.  Rather, Plaintiffs must show each Defendant was directly responsible for the constitutional violations they allegedly suffered.  *E.g., Malesko*, 534 U.S. at 71; *Trulock*, 275 F.3d at 402.  When the Complaint is analyzed under this standard, it is clear that Plaintiffs fail to meet this threshold requirement.

        1.      <u>Padilla's designation and detention as an enemy combatant.</u>

With respect to the first category of alleged violations – Padilla's designation and detention as an enemy combatant – Plaintiffs' Opposition has not cured the deficiencies in their Complaint as identified in Defendants' Motion to Dismiss.  Plaintiffs allege that Defendant Ashcroft, and "Senior Defense Policy Defendants" (whom Plaintiffs identify as Rumsfeld, Jacoby, Wolfowitz, Mobbs, Haynes and ten unidentified individuals) made a "recommendation" that Padilla be detained as an enemy combatant.  Compl. ¶ 42.  However, none of these Defendants can be held personally liable for Padilla's designation and detention as an enemy combatant because any recommendation they

---

[11]  The principal case on which Plaintiffs rely for their "set in motion" theory specifically states that the principle of "effective causation by indirect means" is "grounded in the *literal language* of § 1983 and in general tort law."  *See Sales v. Grant*, 158 F.3d 768, 776 (4th Cir. 1998) (emphasis added).  Plaintiffs point to no published Fourth Circuit case finding this theory controlling in a *Bivens* action, and there is no parallel statutory language supporting such an interpretation.  The precedential value of the proposition for which Plaintiffs cite *Korb v. Lehman* – that a *Bivens* action exists when government officials cause a private employer to fire a private employee for exercising his First Amendment rights, *see* Opp. at 29 (citing 919 F.2d 243 (4th Cir. 1990)) – is questionable given the Supreme Court's pronouncements in *F.D.I.C. v. Meyer*, 510 U.S. 471 (1994) and *Malesko*, 534 U.S. at 66-70.  Even if *Korb* remains good law, it was decided on qualified immunity grounds, and concluded the federal officials should not be held personally liable.  *Korb*, 919 F.2d at 248.

may have submitted on those issues was subject to the judgment and discretion of the President, who

alone ultimately decided to designate and detain Padilla.  *See* MTD at 29-30.  The President's

authority to make this very determination has been upheld by the Fourth Circuit, *see Padilla II*, 423

F.3d at 392, and it is undisputed that the President directed Defendant Rumsfeld to detain Padilla

as an enemy combatant, *see* Compl. Exhs. 2, 3.[12]

Similarly unavailing is Plaintiffs' attempt to hold Defendants Ashcroft, Rumsfeld, Jacoby,

Wolfowitz, Mobbs, Haynes and ten other unidentified Senior Defense Policy Defendants personally

liable for their alleged "knowledge and participation" in the development by "government lawyers,"

Compl. ¶ 36, of an enemy combatant designation process.  In their Opposition, Plaintiffs argue that

this allegation is sufficient for notice pleading purposes.  Opp. at 30.  But even under notice pleading

---

[12]  Neither of the two negligence cases on which Plaintiffs rely to suggest that a third party's intervening act does not break a causal chain, *see* Opp. at 29 (citing *Berry v. Atl. Coast Line RR Co.*, 273 F.2d 572 (4th Cir. 1960) and *Talkington v. Atria Reclamelucifers Fabrieken BV*, 152 F.3d 254 (4th Cir. 1998)), are analogous to this case.  By Plaintiffs' count, at least *16* Defendants allegedly made recommendations concerning the enemy combatant designation, *see* Compl. ¶ 42, which were in turn reviewed by a staff of White House lawyers, whose recommendation was reviewed by Counsel to the President, whose recommendation was forwarded to the President, who considered it along with information from the Department of Defense, and determined that Padilla's enemy combatant designation was appropriate, *see* Compl. Exh. 1 at 4.  Plaintiffs seek to avoid these inconvenient facts by arguing that the Court should accept as true only those statements in Exhibit 1, a speech by former Attorney General Gonzales explaining the designation process, that support their claims.  In *Northern Ind. Gun & Outdoor Shows, Inc. v. City of So. Bend*, upon which Plaintiffs rely, the Seventh Circuit recognized that in considering whether to accept as true statements in documents attached to a complaint, courts should consider "why a plaintiff attached the documents . . ." 163 F.3d 449, 455 (7th Cir. 1998).  Here, Plaintiffs attached Exhibit 1 to describe the process of designating an enemy combatant and to identify each participant's role in that process.  Plaintiffs specifically allege that "[c]*onsistent with the procedure described by Gonzales* [in Exh. 1], Defendants Rumsfeld, Ashcroft . . . Haynes, Jacoby, Wolfowitz, Mobbs . . . personally approved Mr. Padilla's designation and military detention as an 'enemy combatant.'"  Compl. ¶ 38 (emphasis added).  The "procedure described by Gonzales" in Exhibit 1 makes clear that the ultimate decision to designate and detain Padilla was made by the President after independent consideration of information and recommendations from *many* sources, and this Court should not ignore the full description of the procedure proffered.

standards, this claim fails because Plaintiffs do not specify what, if any, role each Defendant played in the development of this alleged process and why that role is sufficient to support damages liability. *See, e.g., Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (noting that in §1983 cases, it is important that "the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.") (emphasis in original) (*citing Bell Atlantic Corp. v. Twombly*, 127 S. Ct 1955, 1970-71 n.10).[13] The Complaint provides no facts suggesting the level(s) of knowledge each of the sixteen identified Defendants had concerning this alleged process and, in fact, in their Opposition papers, Plaintiffs repeat the same exact act for each Defendant.[14] The Complaint provides no facts showing in what way each of these sixteen Defendants participated in developing the process, which Plaintiffs specifically allege was developed by government lawyers. Compl. ¶ 36.[15] Using the label "fact" for their boilerplate assertions does

---

[13] Furthermore, Plaintiffs' allegations that, for instance, Defendant Haynes was a member of a "War Council", Compl. ¶ 47, cannot survive the scrutiny mandated by the Supreme Court. "[F]actually neutral" allegations - i.e., allegations that are consistent with lawful behavior - are inadequate to defeat a motion to dismiss. *See Twombly*, 127 S. Ct. at 1966 n.5. Plaintiffs' claims are not only conclusory, but allege neutral conduct wholly consistent with lawful behavior – allegations insufficient to survive a motion to dismiss. *Id.*; s*ee also National Archives and Records Admin. v. Favish*, 541 U.S. 157, 174 (2004) (recognizing the presumption of legitimacy accorded to the Government's official conduct) (citations omitted).

[14] That Plaintiffs have rearranged their allegations in their Opposition to a defendant-by-defendant format, does not change the allegations' fundamentally conclusory nature. *E.g.*, Opp. at 28 ("Rumsfeld ... develop[ed] an 'extrajudicial, ex parte assessment of enemy combatant status...'"); 32 ("Haynes ... develop[ed] policies including the 'extrajudicial, ex parte assessment of enemy combatant status...'"); 34 ("Wolfowitz ... develop[ed] an 'extrajudicial, ex parte assessment of enemy combatant status...'"); *id.* at 35 (Jacoby and Mobbs); 36 (Ashcroft).

[15] Moreover, in recognizing the President's power to designate an enemy combatant and determining that Padilla's military detention during the duration of hostilities "is unquestionably authorized," *see Padilla II*, 423 F.3d at 392, the Fourth Circuit did not identify any constitutional infirmity with the process by which Padilla was designated an enemy combatant.

nothing to add to their content or alter their conclusory nature. *See Twombly*, 127 S. Ct. at 1966 n.5. Because Plaintiffs fail to sufficiently allege the personal involvement of any Defendant in the violation of any rights associated with Padilla's enemy combatant designation and detention, Claims a-b, and f-j, should be dismissed as to Ashcroft, Rumsfeld, Jacoby, Wolfowitz, Mobbs, and Haynes.[16]

2.    Padilla's interrogation and treatment during his detention.

Plaintiffs also fail to sufficiently allege the personal involvement of Defendants Ashcroft Rumsfeld, Wolfowitz, Jacoby, Mobbs, Haynes, Hanft, Marr, Wright, Keen, Seymour, and Noble in the violation of any rights associated with Padilla's interrogation or conditions of confinement during his detention. Again, *see* MTD at 32-33, Plaintiffs attribute actions to large groupings of defendants without identifying "*each* defendant's *own* constitutional violations." *Trulock*, 275 F.3d at 402. Plaintiffs' justifications for the collective grouping of defendants in this personal liability case fails on two fronts. First, Plaintiffs' contention that the groupings were used for "convenience," Opp. at 31, is unavailing, especially as Plaintiffs use the same boilerplate language to describe the identical alleged "act" of, in some cases, up to forty-four individuals. *See, e.g.*, MTD at 32-33, 36-37 (illustrating collective allegations). Second, a response which asserts that each Defendant committed the identical act, *see* Opp. at 31, does not cure the deficiency identified in Defendants' Motion to Dismiss. Substituting each Defendant's name in front of the same non-specific allegation is no different than using a label to collectively refer to numerous defendants. *See, e.g., Robbins*, 519 F.3d at 1250 (emphasis added) (dismissing *Bivens* claims in part for failure to satisfy the standard of fair notice required by Rule 8 and explaining that "[g]iven the complaint's use of *either* the collective

---

[16]  Plaintiffs do not contest that Defendants Hanft, Marr, Wright, Keen, Seymour, and Noble had no involvement in the decision to designate or detain Padilla. Accordingly, Claims a-b, and f-j should be dismissed as to Hanft, Marr, Wright, Keen, Seymour, and Noble.

14

term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed"). In either event, the flaw is that Plaintiffs do not differentiate among the Defendants or identify what role each played in the alleged constitutional violations. MTD at 32-33, 36-37.

Citing to twenty-nine paragraphs of a 139-paragraph complaint, Plaintiffs argue that the majority of their allegations refer to Defendants individually. Opp. at 31. As Defendants pointed out, MTD at 33, however, the few allegations that do identify the actions of *specific* "Senior Defense Policy Defendants" do not relate to Padilla.[17] Inserting Padilla's name into each allegation for purposes of the Opposition does not alter the fact that the allegations in the Complaint and the documents attached thereto relate to the treatment of detainees held under materially different circumstances than Padilla – *i.e.*, outside the United States, not on U.S. soil. *See* MTD at 33-36. Plaintiffs suggest, without any cogent explanation, that it was nonetheless "foreseeable" that the alleged collective policies of the Senior Defense Policy Defendants regarding individuals detained outside of the United States would be applied to Padilla. Such conjecture is especially implausible given the historically different constitutional standards applicable inside U.S. territory and extra-territorially. *See, e.g., Eisentrager*, 339 U.S. at 781-85; *United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990).[18]

---

[17] Plaintiffs respond by arguing Defendants overlook "a slew of allegations" that relate to Padilla. Opp. at 32. The allegations to which they point, however, apply to Padilla's designation and detention, not to his interrogation or conditions of confinement, to which Defendants' observation pertains. *See* MTD at 33-36. Moreover, as Defendants noted, the few remaining allegations are either conclusory or seek to hold an individual liable for the actions of an agency he heads – both of which are insufficient to demonstrate personal involvement. *Id*. at 35.

[18] Similarly, citations to emails relating to the Norfolk Brig, *e.g.*, Compl. Exh. Index and Exhs. 23, 26-32, are of no support to Plaintiffs' claims about Padilla's conditions of confinement in
(continued...)

Finally, in an attempt to avoid the bar on *respondeat superior* liability in *Bivens* cases, Plaintiffs contend that Hanft, Marr, Keen, Wright, and Seymour – Brig Commanders and senior supervisors – as well as eight unidentified individuals, all directly participated in violations of Padilla's constitutional rights while he was detained at the Charleston Brig.  Opp. at 37.  According to Plaintiffs, these thirteen defendants, as well as Defendant Noble, and thirty additional unidentified individuals all supposedly personally oversaw Padilla's treatment.  *Id.* at 37-38.  Even were that true, it does not identify how each Defendant personally participated in a claimed constitutional violation. Nowhere do Plaintiffs allege what each defendant did, ordered, or knew about.  Nor, as explained in the Motion to Dismiss, MTD at 37, do Plaintiffs affirmatively link any alleged constitutional violation to any particular defendant.  Plaintiffs simply assert that "deliberate indifference suffices to hold prison officials liable under the Fifth Amendment."  Opp. at 37.  As the Fourth Circuit has observed, however, "[d]eliberate indifference is a very high standard - a showing of mere negligence will not meet it."  *Young v. City of Mount Ranier*, 238 F.3d 567, 575-76 (4th Cir. 2001); *see also* MTD at 36 n.22, citing *id.* at 577 (explaining that "throw[ing] in words . . . such as 'deliberate indifference'" and "[t]he presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support a finding of deliberate indifference.").  Deliberate indifference requires a showing that each defendant "actually knew of and disregarded a substantial risk of serious injury to the detainee or that they

---

[18](...continued)
the Charleston Brig.  The only two documents that pertain to the Charleston Brig address a different detainee.  Moreover, one of these documents addresses translation services, *e.g.*, Compl. Exh. 25, which has nothing to do with any claim at issue in this lawsuit, and the other document addresses access to legal mail and legal materials, *e.g.*, Compl. Exh. 24.  As discussed below, the Fourth Circuit has specifically acknowledged that being held in isolation and incommunicado are permissible attributes that flow directly from detention as an enemy combatant. *See infra* § II.B.

actually knew of and ignored a detainee's serious need for medical care." *Id*. at 576.[19]  Claims c-g

should be dismissed because Plaintiffs have failed altogether to demonstrate deliberate indifference

by any Defendant.

**B.     The Fourth Circuit's Rejection Of Padilla's Habeas Corpus Petition Is Controlling.**

In *Padilla II*, the Fourth Circuit rejected Padilla's petition for a writ of habeas corpus to

secure his release from military detention.  In its decision, the Fourth Circuit made two legal

determinations central to the claims Plaintiffs assert in this matter.  First, the Circuit held that the

President "unquestionably" possessed authority, pursuant to the AUMF, to designate persons as

enemy combatants and to detain such persons in military custody.  *Padilla II*, 423 F.3d at 389.

Second, the Circuit held that based upon the facts the government relied upon in determining that

Padilla should be designated as an enemy combatant, which the government and Padilla agreed by

stipulation would be considered true for purposes of the appeal, Padilla qualified as an enemy

combatant under the definitions adopted by the Supreme Court in *Hamdi* and *Ex parte Quirin*.  *See

Padilla II*, 423 F.3d at 392.  The Fourth Circuit found no constitutional infirmity in the process used

to designate enemy combatants and specifically recognized that detaining them served the equally

---

[19]  The cases Plaintiffs cite do not suggest otherwise. *See* Opp. at 37-38 (citing *Hewlett v. Fox*, 2008 WL 2943257, *7  (D.S.C. July 30, 2008) (official must "know of and disregard an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference") and *Hicks v. James*, 255 Fed. Appx. 744, 748-49 (4th Cir. July 17, 2007) ("Prison officials evince deliberate indifference to a serious medical need by completely failing to consider an inmate's complaints or by acting intentionally to delay or deny the prisoner access to adequate medical care.")).  With respect to Plaintiffs' allegations against Defendant Noble, Compl. ¶ 103, Plaintiffs fail to allege that Padilla complained to Noble or requested care from him, or that Noble failed to consider any complaint or request.  Moreover, while Plaintiffs generally allege that Noble knew of the conditions under which Padilla was being detained, the signs of distress to which Plaintiffs now point in their Opposition, *see* Opp. at 38, are not alleged to have been observed by or reported to Noble, *see* Compl. ¶ 102.

important purposes of: 1) preventing the detainee from returning to the field of battle; 2) facilitating the process of gathering intelligence from the detainee; and 3) "restrict[ing] the detainee's communication with confederates so as to ensure that the detainee does not pose a continuing threat to national security even as he is confined." *Id*. at 395.  Thus, to the extent that any of Plaintiffs' claims challenge the legal authority to designate and detain Padilla an enemy combatant, the process through which that designation was made, or the consequences that flowed from that designation in terms of his being detained and interrogated in isolation and incommunicado, those claims are precluded by the Fourth Circuit's decision.  *See* MTD at 38-44.

Plaintiffs attempt to avoid the preclusive effect of *Padilla II* by claiming it is not a final judgment for collateral estoppel purposes.  *See* Opp. at 11.  Of course, even if this is true, it does not undermine the *precedential* relevance of the decision – which is binding on this Court.  *See Busby v. Crown Supply, Inc.*, 896 F.2d 833, 840-41 (4th Cir.1990).  Plaintiffs concede as much, *see* Opp. at 10, and that concession alone should be dispositive.  But even as to estoppel Plaintiffs are wrong because *Padilla II* clearly meets the criteria for a final judgment for collateral estoppel purposes. The parties were fully heard on the issues in the Fourth Circuit; the Circuit's decision is supported by a reasoned opinion; and the decision was subject to appeal, which Padilla pursued.[20]  *See Swentek v. US Air, Inc.*, 830 F.2d 552, 561 (4th Cir. 1987); Restatement (Second) of Judgments § 13, Comment g (1982).  The finality of *Padilla II* is further supported by the Fourth Circuit's refusal to vacate the decision when the government moved for authorization to transfer Padilla from military to civilian law enforcement custody.  *See Padilla v. Hanft*, 432 F.3d 582 (4th Cir. 2005).[21]

---

[20]  *See Padilla v. Hanft*, 547 U.S. 1062 (2006).

[21]  Plaintiffs' assertion that it is "too early" for the Defendants to invoke collateral estoppel" because it "is an affirmative defense that must be pleaded," *see* Opp. at 10, is unsupportable given that the Fourth Circuit has affirmed the granting of motions to dismiss on the basis of collateral

(continued...)

Plaintiffs try to avoid the preclusive effect of the Fourth Circuit's decision with respect to the legal authority to designate and detain Padilla by arguing that "facts" regarding his designation were not litigated. *See* Opp. at 11-12. This argument fails for two reasons. First, it is of no fault of any of the Defendants that the factual basis for Padilla's designation as an enemy combatant was never litigated. As Defendants have shown, *see* MTD at 45 n.27, the reasons Padilla did not obtain a factual hearing on the basis for his designation and detention as an enemy combatant are twofold: 1) he filed his initial habeas petition challenging the basis for his designation and detention in the wrong jurisdiction; and 2) once Padilla filed in the proper jurisdiction – the District of South Carolina – he made a strategic decision to litigate the factual basis for his designation and detention after litigating the question of whether the President had the authority to designate and detain him as an enemy combatant. Once the Fourth Circuit denied Padilla's habeas petition, the District Court for the District of South Carolina was to decide the designation's factual validity. The issue became moot, however, when Padilla was indicted on federal criminal charges. Second, regardless of the process Padilla chose to challenge his enemy combatant designation, the government was entitled to detain him pending the outcome of that process. Plaintiffs cite no authority to the contrary.

More importantly, even if there were deficiencies in the actual facts supporting Padilla's enemy combatant designation, Plaintiffs have alleged nothing that supports holding the named Defendants personally responsible for any such deficiencies. Plaintiffs do not allege any Defendants had any role in developing or gathering the facts on which the enemy combatant designation was based; they allege only that Defendants Rumsfeld, Ashcroft, Haynes, Jacoby, Wolfowitz, and Mobbs

---

[21](...continued)
estoppel. *See Weinberger v. Tucker*, 510 F.3d 486, 495 (4th Cir. 2007).

"relied" upon evidence provided by others.  *See* Compl. ¶ 39.  Plaintiffs offer nothing suggesting this

reliance was unreasonable or unlawful.[22]  At best, all Plaintiffs allege is that these Defendants, like

the Fourth Circuit, took as true the facts that were presented to them concerning Padilla's alleged

involvement in terrorist activity and, like the Fourth Circuit, determined that Padilla met the criteria

for designation and detention as an enemy combatant based upon those facts.  On that claim the

Fourth Circuit's decision is preclusive.

C.    **Padilla Has Not Stated Any Violation Of The Right Of Access To Courts, Or Of The Eighth Amendment, Or Of The Fifth Amendment Right Against Self-Incrimination.**

Even apart from the preclusive effect of *Padilla II*, Padilla has not stated a violation of the

right of access to courts.  Padilla seeks to premise this claim on the vague reference to being

"hindered from bringing his claims."  *See* Opp. at 46-47.  Plaintiffs' definition of "hindered" does

not meet the Supreme Court's standard for stating an access to courts claim.  As the Supreme Court

---

[22]  Plaintiffs' sole contention in this regard is the conclusory claim that Rumsfeld, Ashcroft, Haynes, Jacoby, Wolfowitz, and Mobbs knew that a "significant portion" of the evidence they relied upon "in recommending that [ ] Padilla be deprived of his freedom" was a "constitutionally inadequate basis for seizure."  Compl. ¶ 39.  Plaintiffs purport to support this conclusory claim with the equally conclusory and self-serving assertion that the Mobbs Declaration "consist[s] of plainly unreliable and uncorroborated statements by two suspected terrorists." *Id.*  Plaintiffs rely on isolated snippets from a footnote in the Declaration stating that there is a belief that two confidential sources who provided information about Padilla were not "completely candid."  *See* Opp. at 4-5.  However, the Declaration does not state that these two sources were not being candid about Padilla's activities with al Qaeda; it states that they were not candid about *their own* association with al Qaeda and terrorist activities.  *See* Compl. Exh. 2 at n.1.  And contrary to Plaintiffs' assertion, the Declaration states that much of the information the two sources provided "has been corroborated and proven accurate and reliable."  *See id.*  The Declaration also clearly states that information about Padilla's al Qaeda activities was derived from "*multiple* intelligence sources," including interviews with sources beyond the two upon which Plaintiffs base their entire argument.  *See id.* ¶ 3 (italics added).  Plaintiffs selectively omit these facts.  In any event, there is certainly no support, based on that reference, for a claim that any Defendant was so deliberately indifferent to any known facts that tended to exonerate Padilla such as to give rise even to an arguable constitutional claim.  As to Defendant Mobbs, who candidly disclosed the concern in his declaration, Plaintiffs' contention is especially specious.

recognized in *Lewis v. Casey*, 518 U.S. 343, 351-52 (1996), an access to courts claim requires showing "actual injury." This injury occurs when a claim either has been lost or could not be filed because of official acts. *Id.* at 351. In other words, the plaintiff must have been "shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 414-15 (2002). Nowhere do Plaintiffs establish that Padilla was "shut out of court" due to the Defendants' actions, which is fatal to their claim. *See Harbury*, 536 U.S. at 414-15. To the contrary, he filed two habeas petitions in two different jurisdictions. To the extent that Padilla argues that his "actual injury" was not having access to counsel, he still has not specified any claim that was lost or could not have been filed. Padilla's habeas petition alleged that his "ongoing interrogation" "throughout two years of incommunicado detention" violated the Constitution. *See generally* Petition for Writ of Habeas Corpus *filed in Padilla v. Hanft*, No. 04-2221-HFF-RSC (D. S.C.). Padilla also sought an order requiring the government to cease all interrogation while his petition was pending. *See id.* There is no claim that Padilla was unable to bring because of any alleged denial of access to counsel.[23]

Padilla does not contest the Defendants' argument that he has not stated a violation of the Eighth Amendment or the Fifth Amendment right against self-incrimination.

### D. Plaintiffs Fail To Allege A Violation Of Any Clearly Established Right.

Contrary to Plaintiffs' assertion, *see* Opp. at 49-50, Defendants have not argued that the "novelty" of the "enemy combatant" designation means that the rights Plaintiffs claim cannot be clearly established. There is nothing novel about the "enemy combatant" designation. As the

---

[23] Padilla's claim that he was unable to "rebut the Executive's factual assertions," *see* Opp. at 47, is inapposite since he made a strategic decision to litigate the factual basis for his designation and detention after litigating whether the President had the authority to designate and detain him. *See* MTD at 45 n.27. In any event, again, it is simply not relevant to the conduct of the Defendants here, who are not alleged to have been involved in the fact-gathering process.

21

Supreme Court observed in *Hamdi*, the designation was recognized over sixty-five years ago when the Court, in *Ex parte Quirin*, held that "[c]itizens who associate themselves with the military arm of the enemy government, and with its aid, guidance and direction enter this country bent on hostile acts, are enemy belligerents within the meaning of . . . the law of war." *Hamdi*, 542 U.S. at 519 (quoting *Ex parte Quirin*, 317 U.S. at 37-38). Defendants have argued, and Plaintiffs have not disputed, that no federal court has ever afforded a designated enemy combatant constitutional protections of the nature or degree Plaintiffs seek in this case, and certainly none had done so at the time of Padilla's detention – the point in time at which the rights Plaintiffs claim must have been clearly established. *See* MTD at 47-50. The most recent and closely analogous cases in which courts attempted to balance the rights of an American citizen suspected of terrorism and the Executive Branch's authority to conduct war, protect national security, and formulate foreign policy – *Hamdi* and *Padilla II* – both make clear that the rights Plaintiffs claim in this suit were not clearly established at the time of the Defendants' alleged actions. The Fourth Circuit clearly held that the constitutional rights of an enemy combatant are not violated either by the enemy combatant designation or by incommunicado detention for purposes of interrogation. That decision is dispositive for qualified immunity purposes even if, as Plaintiffs appear to assert, the Fourth Circuit was wrong.[24]

---

[24] Plaintiffs' reliance on *Hydrick v. Hunter*, 500 F.3d 978 (9th Cir. 2007), is misplaced. *Hydrick*, a Ninth Circuit case, dealt with the rights of a new category of *civil* detainees; it says nothing about the clearly established rights of *military* detainees such as Padilla. *Id.* at 983. Moreover, the *Hydrick* court found that the plaintiffs' procedural due process rights were not clearly established in part because there were "relevant differences" between the civil detainee plaintiffs and prisoners. *Id.* at 995. There are clearly relevant differences between a civil detainee or prisoner, and a person the President determines to be an enemy combatant against the United States. *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292 (4th Cir. 2006) and *Doe v. LaDue*, 514 F.Supp.2d 1131 (D. Minn. 2007) are similarly inapposite. The due process right at issue in *Ridpath*, employment at a public university, was a well-established context that is not remotely similar to that

(continued...)

## III.    PADILLA HAS NOT STATED A CLAIM UNDER THE RELIGIOUS FREEDOM RESTORATION ACT ("RFRA").

As shown in the Defendants' Motion to Dismiss, Padilla has not stated a claim under RFRA, 42 U.S.C. § 2000bb *et seq.*, because: 1) RFRA does not create a cause of action against officials in their individual capacity; and 2) even if such a cause of action exists, the Defendants are entitled to qualified immunity. Plaintiffs concede that only the phrase "other person acting under color of law" in 42 U.S.C. § 2000bb-2(1) could conceivably implicate a federal official in his or her individual capacity. *See* Opp. at 53-54. Plaintiffs cite no Fourth Circuit law finding that this phrase includes officials in their individual capacities. At the time of the events in question, the Fourth Circuit had not (and still has not) addressed whether RFRA allows for an individual capacity damages action against a federal (or even state) official.[25] The Fourth Circuit has, however, recognized that it is an open question in the Circuit whether the Religious Land Use and Institutionalized Persons Act, a statute that mirrors the relevant RFRA provisions, *Madison v. Riter*, 355 F.3d 310, 315 (4th Cir. 2003), allows for damages against an official sued in an individual capacity. *Lovelace v. Lee*, 472 F.3d 174, 197 n.7 (4th Cir. 2006). Moreover, it was not clearly established in the Fourth Circuit that

---

[24](...continued)
in which Plaintiffs' claims are presented. And contrary to Plaintiffs' assertion, the district court in *LaDue*, a case from the District of Minnesota, did not consider "predatory offender registrants" to be a "new legal category" of persons claiming Fourth Amendment protections. Rather, the court analogized these claimants to probationers and considered cases recognizing the Fourth Amendment rights of probationers as also supporting the Fourth Amendment rights claimed by the "predatory offender registrants." *See LaDue*, 514 F. Supp. 2d at 1138 (citing *U.S. v. Vincent*, 167 F.3d 428, 430 (8th Cir. 1999)). Moreover, there are clearly relevant differences between a probationer or "predatory offender registrant," and a person the President has determined to be an enemy combatant.

[25]    The fact that two circuit and three district courts outside of the Fourth Circuit have recognized that RFRA authorizes suits against private persons, *see* Opp. at 53 n.45, does not clearly establish that such suits are available in the Fourth Circuit.

a RFRA claim can be premised on an intentionally discriminatory policy or practice,[26] or that the interests set forth in RFRA outweigh the Executive's authority to conduct war, protect national security, and formulate foreign policy.

## IV.    PLAINTIFFS' CLAIMS FOR EQUITABLE RELIEF MUST BE DISMISSED.

Plaintiffs have no standing to seek prospective relief regarding Padilla's past military detention because it ended long ago and he is now serving an extensive criminal sentence in civilian custody.  Nor does the Fourth Circuit even recognize equitable relief claims against government officials in their individual capacities.  *See Kirby v. City of Elizabeth, N.C.*, 388 F.3d 440, 452 n.10 (4th Cir. 2004) (injunctive relief can be awarded only against a government official in his official capacity), *cert. denied*, 547 U.S. 1187 (2006).[27]  Plaintiffs try to distinguish *Kirby* by claiming that the plaintiff in that case sought "affirmative injunctive relief" while Plaintiffs here seek "prohibitory" injunctive relief.  *See* Opp. at 57 n.53.  Even assuming there is a distinction of practical consequence between "affirmative" and "prohibitory" relief, and there is not, *Kirby* does not recognize any such distinction.  Moreover, the equitable relief sought by the plaintiff in *Kirby* and rejected by the Fourth

---

[26] Plaintiffs cite *Lovelace* for the proposition that intentional conduct is sufficient to establish fault "under statutory prohibitions on interference with religious rights."  *See* Opp. at 55.  However, as noted above, *Lovelace* also recognized that it was not clearly established in 2002 that the statutory prohibition at issue – the RLUIPA, which mirrors the protections of RFRA – allows for individual capacity damages actions.  472 F.3d at 197 n.7.

[27] *Goldstein v. Moatz*, 364 F.3d 205 (4th Cir. 2004), is not to the contrary.  The issue in in *Goldstein* was whether certain officials were entitled to absolute immunity for *Bivens* claims that sought damages and declaratory relief.  The Fourth Circuit remanded the declaratory relief claim so that the district court could determine whether this relief would run against the United States, and thus be barred by sovereign immunity.  *Id.* at 219.  The equitable relief Plaintiffs seek here can only be obtained from the United States because only by acting as federal officials can any of the Defendants alter government policy or practice to comply with any declaration or injunction.  *See* MTD at 7-10.  The Defendants have no ability to do this in their capacity as individuals, *Kirby*, 388 F.3d at 452 n.10, particularly as many either no longer hold the same job or are retired from federal service, making Plaintiffs' claims even more attenuated and incapable of redress.

Circuit included an injunction that would have prevented the defendants from requiring the plaintiff to perform secretarial duties, which was clearly "prohibitory" relief. *See* 388 F.3d at 452 n.10. *Kirby*, in any event, does not save Plaintiffs' claim for declaratory relief as to Padilla's *past* designation because that claim cannot meet the case or controversy requirement of Article III. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983).

## CONCLUSION

For the reasons stated above, all of Plaintiffs' claims should be dismissed.

Dated: December 24, 2008

Respectfully submitted,

W. WALTER WILKINS
United States Attorney for the
District of South Carolina


*s/BARBARA M. BOWENS*
BARBARA M. BOWENS (I.D. #4004)
Civil Chief
United States Attorney's Office
District of South Carolina
First Union Building
1441 Main Street Suite 500
Columbia, SC 29201
Telephone: (803) 929-3052
Facsimile: (803) 254-2912
E-mail: barbara.bowens@usdoj.gov

GREGORY G. KATSAS
Assistant Attorney General

C. FREDERICK BECKNER III
Deputy Assistant Attorney General

TIMOTHY P. GARREN
Director Torts Branch, Civil Division

MARY HAMPTON MASON
Senior Trial Counsel

GLENN S. GREENE (admitted *pro hac vice* )
SARAH WHITMAN, Trial Attorneys
United States Department of Justice
Torts Branch, Civil Division
P.O. Box 7146, Ben Franklin Station
Washington, DC 20044
Telephone:  (202) 616-4143
Facsimile:   (202) 616-4314
E-mail: glenn.greene@usdoj.gov
*Attorneys for Defendants Donald H. Rumsfeld, John Ashcroft, Paul Wolfowitz, Lowell E. Jacoby, Michael H. Mobbs, William Haynes, Catherine T. Hanft, Melanie A. Marr, Stephanie L. Wright, Mack Keen, Sandy Seymour, Dr. Craig Noble, and Robert M. Gates*