IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JOSE PADILLA, et al., ) | |
| ) | |
| Plaintiffs, ) | Case No. 2:07-410-HFF-RSC |
| ) | |
| v. ) | |
| ) | |
| DONALD H. RUMSFELD, et al., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**

Plaintiffs respectfully submit this Notice to alert the Court to two recent authorities that are relevant to this case.

First, on December 15, 2008, the Supreme Court affirmed the relevance of its ruling in *Boumediene v. Bush* to damages actions. In *Rasul v. Meyers*, the Court not only granted a petition for certiorari, but immediately vacated the underlying decision of the D.C. Circuit, which had upheld a district court order dismissing the damages action. The Supreme Court remanded the case to the Circuit with instructions to reconsider it in light of *Boumediene*'s holding that the Suspension Clause of the U.S. Constitution "has full effect at Guantanamo Bay." *Boumediene v. Bush*, 128 S.Ct. 2229, 2262 (2008); Order to Grant, Vacate and Remand, *Rasul v. Meyers*, (No. 08-325, Dec. 15, 2008) available at 2008 WL 3910997, http://origin.www.supremecourtus.gov/docket/08-235.htm; contra Defs. Reply Br. at 3-4.

*Rasul* is a damages action brought under *Bivens* against Executive branch officers in their individual capacities. The plaintiffs had been labeled "enemy combatants" and detained at Guantanamo Bay. They claimed that U.S. officers violated their Fifth Amendment rights by subjecting them to a systematic program of torture and abuse. Complaint, *Rasul v. Myers*, No.

1:04-cv-01864-RMU (Oct. 27, 2004).  In short, their claims are similar to the claims brought in this case – except that they involve non-citizens whose detention and treatment occurred outside the United States, rather than a citizen whose detention and treatment occurred within the United States.  The plain implication of the Supreme Court's ruling is that there is at least a colorable claim that *Bivens* remedies may be available even to non-citizen detainees held at Guantanamo.  It is unthinkable that Mr. Padilla, as a U.S. citizen alleging abuse on U.S. soil, would be in any lesser position than the *Rasul* plaintiffs.

Second, just days earlier, on December 11, 2008, the Senate Armed Services Committee released a report concluding that the interrogation practices at issue in this case violated longstanding and accepted legal principles.  *See* Senate Armed Services Committee, Inquiry into Treatment of Detainees in U.S. Custody, available at http://levin.senate.gov/newsroom/supporting/2008/Detainees.121108.pdf.  While the Senate Report focused on abuses committed at the Abu Ghraib prison in Iraq, its conclusions pertain to responsibility for the degradation of standards suffered by all those designated and detained as enemy combatants, including Mr. Padilla.  In particular, the Committee criticized Defendant Haynes' role in approving previously banned techniques:

> Department of Defense General Counsel William J. Haynes II's effort to cut short the legal and policy review of the October 11, 2002 GTMO request initiated by then-Captain Jane Dalton, Legal Counsel to the Chairman of the Joint Chiefs of Staff, was inappropriate and undermined the military's review process. The General Counsel's subsequent review was grossly deficient. Mr. Haynes's one page recommendation to Secretary of Defense Donald Rumsfeld failed to address the serious legal concerns that had been previously raised by the military services about techniques in the GTMO request. Further, Mr. Haynes's reliance on a legal memo produced by GTMO's Staff Judge Advocate that senior military lawyers called "legally insufficient" and "woefully inadequate" is deeply troubling.

*Id*. at xviii.  Further, the Committee concluded that

> Department of Defense General Counsel William J. Haynes II's direction to the Department of Defense's Detainee Working Group in early 2003 to consider a legal memo from John Yoo of the Department of Justice's OLC as authoritative, blocked the Working Group from conducting a fair and complete legal analysis and resulted in a report that, in the words of then-Department of the Navy General Counsel Alberto Mora contained "profound mistakes in its legal analysis." Reliance on the OLC memo resulted in a final Working Group report that recommended approval of several aggressive techniques, including removal of clothing, sleep deprivation, and slapping, similar to those used in SERE training to teach U.S. personnel to resist abusive interrogations.

*Id*. at xix.  Finally, the Committee concluded that "Secretary of Defense Donald Rumsfeld's authorization of aggressive interrogation techniques for use at Guantanamo Bay was a direct cause of detainee abuse there."  *Id*.

The Supreme Court order and the Senate report represent those two branches' most recent statements on the issues at the heart of this case.

Respectfully submitted,

Dated:  January 13, 2009         /S/ MICHAEL P. O'CONNELL
Michael P. O'Connell
STIRLING & O'CONNELL
145 King Street, Suite 410
P.O. Box 882
Charleston, S.C.  29402
(843) 577-9890
South Carolina Identifications 4260

Jonathan M. Freiman (*pro hac vice*)
Hope R. Metcalf (*pro hac vice*)
NATIONAL LITIGATION PROJECT OF THE ALLARD K.
    LOWENSTEIN INTERNATIONAL HUMAN RIGHTS CLINIC
Yale Law School
127 Wall Street
New Haven, CT  06510-8215
Telephone:  (203) 498-4584
Facsimile:  (203) 782-2889

3

*Of Counsel:*

WIGGIN AND DANA LLP
One Century Tower
265 Church Street
New Haven, CT  06510-7001