IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JOSE PADILLA, et al., ) | |
| ) | |
| Plaintiffs, ) | Case No. 2:07-410-HFF-RSC |
| ) | |
| v. ) | |
| ) | |
| DONALD H. RUMSFELD, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
BY UNITED STATES SECRETARY OF DEFENSE
IN HIS OFFICIAL CAPACITY**

**INTRODUCTION**

At oral argument on the motion to dismiss by the Secretary of Defense on January 29, 2009, plaintiffs argued that plaintiff José Padilla's alleged reputational injury, standing alone, satisfies the "injury in fact" requirement for Article III standing. Plaintiffs relied on two decisions not cited in their memorandum in opposition: Meese v. Keene, 481 U.S. 465 (1987), and Foretich v. United States, 351 F.3d 1198 (D.C. Cir. 2003). This supplemental memorandum explains why those decisions actually undercut plaintiffs' claim of standing.

**ARGUMENT**

Plaintiffs Have Not Established Their Standing to
Sue Based on Reputational Injury

Plaintiffs assert that Meese v. Keene and Foretich v. United States support their claim of reputational injury as a basis for standing against the Secretary of Defense. In truth, both of those decisions, along with others, emphasize that a plaintiff relying on reputational injury must establish the factual likelihood of concrete injury to his interests. The plaintiffs have not done so here.

In <u>Meese v. Keene</u>, the plaintiff, an attorney and member of the California State Senate, challenged the U.S. Attorney General's designation of three films as "political propaganda" under a statute that imposed certain registration and disclosure requirements in relation to such material. 481 U.S. at 467. The plaintiff alleged that he intended to exhibit the films and that their designation as "political propaganda" would harm his reputation. See <u>id</u>. at 473. He did not, however, rely only on a general claim of injury to his reputation; rather, he stated that —

> if he were to exhibit the films while they bore such characterization, his personal, political, and professional reputation would suffer and <u>his ability to obtain re-election and to practice his profession would be impaired</u>. In support of this claim, [plaintiff] submitted detailed affidavits, including one describing the results of an opinion poll and another containing the views of an experienced political analyst, supporting the conclusion that his exhibition of films that have been classified as "political propaganda" by the Department of Justice would substantially harm his chances for reelection and would adversely affect his reputation in the community.

<u>Id</u>. 473-74 (citations, footnotes, and internal quotation marks omitted) (emphasis added). On this basis, the court found standing, particularly given the risk of "an impairment of [plaintiff's] political career." <u>Id</u>. at 475.

Similarly, in <u>Foretich v. United States</u>, a medical doctor sought to challenge an enactment by the U.S. Congress that essentially resolved, against the plaintiff, a custody dispute in which plaintiff's estranged wife had accused him of sexually abusing his daughter. 351 F.3d at 1205-08. Plaintiff asserted that the enactment had "harmed his reputation by embodying a congressional determination that he is a child abuser." <u>Id</u>. at 1213. Like the plaintiff in <u>Keene</u>, however, he did not rest on that bare allegation. Rather, he submitted evidence on which the court found:

> The Act . . . damaged Dr. Foretich's professional reputation. Once a prominent oral surgeon, Dr. Foretich's business suffered a 30% decline following adoption

of the Act. Forced to seek employment outside of northern Virginia, he was denied a position at a North Carolina university in part because of the Act. He further stated that he was asked to resign his position as Regent of the American College of Oral and Maxillofacial Surgeons on the grounds that "it would not be appropriate for an officer to serve after Congress had taken action finding that I had abused my daughter."

Id. at 1209 (citations omitted). On this basis, the court concluded that "Dr. Foretich's reputational injuries are sufficiently concrete . . . to satisfy the requirements of Article III standing. Id. at 1210.

Other decisions also reflect the need for a factual showing of substantial likelihood of concrete harm due to "reputational injury." In Ezzell Trucking, Inc. v. Federal Motor Carrier Safety Administration, the plaintiff sought judicial review of defendant's "finding that the company had violated regulations concerning pre-employment drug testing of drivers." 309 F.3d 24, 24 (D.C. Cir. 2002). In support of its standing, plaintiff argued that "the drug testing violation is listed in the Administration's public database, called SafeStat," thus injuring the company's business reputation. See id. at 26. The court rejected that argument, finding that plaintiff had not produced adequate "evidence" that the claimed reputational injury was "concrete, not speculative." Id. Said the court:

> The company cites only a treatise saying that some insurance companies and trucking customers consider safety ratings in setting rates and in choosing carriers. The treatise, however, does not specify whether industry watchers focus on carriers' overall ratings or individual factor scores, nor whether [plaintiff's] insurance providers or customers have changed their business decisions based on the company's SafeStat listing.

Id. (emphasis in original; citation omitted); see Schaffer v. Clinton, 240 F.3d 878, 885 (10th Cir. 2001) (finding no standing where plaintiff had "point[ed] to no concrete evidence of a loss of credibility or other reputational injury as a result of [the action he challenged]").

3

Under these standards, the plaintiffs here have not established any concrete harm due to the "reputational" injury they allege. Plaintiffs allege only "the social stigma attached to [Padilla's] designation as an enemy combatant," which, they assert, will "seriously undermine Padilla's freedom to rebuild his life following his release from prison." See Plaintiffs' Opposition to Motion to Dismiss by U.S. Secretary of Defense in His Official Capacity at 7, 10 (Doc. #107). Unlike the plaintiffs in Keene and Foretich, the plaintiffs in this case have submitted no "concrete evidence" to support their allegations of reputational injury, and they can show no likelihood of injury to business interests, no impairment of the ability to "practice [a] profession," and no similar concrete harm. See Schaffer, 240 F.3d at 885; Keene, 481 U.S. at 473. Thus, even the cases on which plaintiffs rely undercut their assertion of Article III standing based on reputational injury.[1]

---

[1] Plaintiffs' attempt to challenge José Padilla's designation as an "enemy combatant" when he is no longer detained as such is similar to attempts by convicted felons to challenge their conviction after release from imprisonment. The completion of a term of imprisonment moots a challenge to a criminal conviction unless the conviction entails concrete legal consequences that persist after release, such as an inability to "engage in certain businesses; [to] serve as an official of a labor union for a specified period of time; [to] vote [and to] serve as a juror." See Carafas v. LaVallee, 391 U.S. 234, 237-38 (1968); see also Spencer v. Kemna, 523 U.S. 1, 7-12 (1998) (counseling caution in presuming collateral consequences from criminal conviction); United States v. Hardy, 545 F.3d 280, 283-84 (4th Cir. 2008) (holding, based on Spencer, that defendant's release from custody had mooted his challenge to revocation of supervised release). Plaintiffs in this case have not suggested that Padilla's designation as an enemy combatant carries any concrete legal consequences of this nature. Moreover, the Supreme Court has expressly rejected reputational injury, without more, as a basis for standing to challenge a conviction after release. See Spencer, 523 U.S. at 16 n.8 (stating that finding reputational injury sufficient to avoid mootness "would have rendered entirely unnecessary the inquiry into concrete collateral consequences of conviction in many of our cases"); see also Jackson v. California Dep't of Mental Health, 399 F.3d 1069, 1075 (9th Cir. 2005) ("The Supreme Court has consistently held that reputation is not a sufficient interest to avoid mootness. . . . Any interest that would not be enough to keep the case from becoming moot is necessarily insufficient to confer standing. . . . Thus, [plaintiff] did not have standing to challenge the state court's jurisdiction in order to vindicate his reputation.").

## **CONCLUSION**

Accordingly, for the reasons stated above and in the Secretary's opening memorandum and reply, plaintiffs' claim against the Secretary of Defense in his official capacity should be dismissed.

Respectfully submitted,

MICHAEL F. HERTZ
Acting Assistant Attorney General

W. WALTER WILKINS
United States Attorney

s/ *Barbara M. Bowens*
BARBARA M. BOWENS (I.D. #4004)
Civil Chief
United States Attorney's Office
First Union Building
1441 Main Street Suite 500
Columbia, South Carolina 29201
Telephone:   (803) 929-3052
Facsimile:    (803) 254-2912
E-mail: barbara.bowens@usdoj.gov

VINCENT M. GARVEY
Deputy Branch Director
Federal Programs Branch

W. SCOTT SIMPSON (I.D. #9965 Inactive)
Senior Trial Counsel

Federal Programs Branch, Civil Division
U.S. Department of Justice
Post Office Box 883
Washington, D.C. 20044
Telephone:   (202) 514-3495
Facsimile:    (202) 616-8470
E-mail: scott.simpson@usdoj.gov

Dated:  February 27, 2009

COUNSEL FOR UNITED STATES
SECRETARY OF DEFENSE
IN HIS OFFICIAL CAPACITY