**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| ESTELA LEBRON, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>DONALD H. RUMSFELD, et al., )<br>)<br>Defendants. ) | Case No. 2:07-cv-410-RMG |

**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT WILLIAM J. HAYNES II'S MOTION TO DISMISS**

Congress has conferred absolute statutory immunity upon Department of Defense lawyers, paralegals, and other legal staff from *any* civil action brought *in connection with* the provision of legal services. *See* 10 U.S.C. § 1054. Last term, the Supreme Court unanimously held that analogous language in a predecessor statute broadly confers immunity from constitutional torts. *See Hui v. Castaneda*, 130 S. Ct. 1845, 1851 (2010). Mr. Haynes has explained that Plaintiffs' allegations fall squarely within the scope of Section 1054. *See* Mem. of Law in Support of William J. Haynes II's Mot. to Dismiss (Mot.) at 11–12.

In response, Plaintiffs do not dispute that the General Counsel is a Department of Defense lawyer covered by Section 1054. Plaintiffs instead urge this Court to limit, based upon a narrow reading of its title and legislative history, the plain text of Section 1054 to "legal malpractice [actions brought] by dissatisfied clients" and exclude from coverage all other claims in connection with legal services. Pls.' Opp. to Def. William J. Haynes II's Mot. to Dismiss (Opp.) at 3–4. Plaintiffs' argument fails at the first step: Section 1054's text is unambiguously broad, and this broad language must be given effect and cannot be narrowed by reference to

Section 1054's title or legislative history.  Additionally, Section 1054's title and legislative history indicate only that Section 1054 *includes* coverage of legal malpractice, not that it excludes other causes of action, as Plaintiffs suggest.

Plaintiffs also argue (Opp. 10–13) that the allegations upon which they base their claims against Mr. Haynes are beyond the scope of his employment.  Unable to effectively distinguish a recent decision of the D.C. Circuit applying District of Columbia law (which they concede applies here), Plaintiffs resort to urging this Court to ignore it.  But, as explained below, District of Columbia law is clear: conduct that is an outgrowth of employment, such as alleged here, is within the scope of employment.  Moreover, Plaintiffs do not challenge that their allegations fall squarely within the scope of the General Counsel's duties as defined in Department regulations.[1]

## ARGUMENT

**I.     Plaintiffs' Allegations Against Mr. Haynes Are Encompassed by the Text and Plain Meaning of 10 U.S.C. § 1054.**

Section 1054 is unambiguously broad enough to cover the allegations against Mr. Haynes.  It applies not only to loss of property caused by negligent acts but also to *injury* caused

---

[1] Plaintiffs also assert that Mr. Haynes's immunity argument is a successive motion barred by Rule 12(g).  *See* Opp. at 1 n.1.  Not so.  Mr. Haynes's argument, which is predicated upon an intervening Supreme Court decision of the sort the parties were recently invited to brief, *Hui v. Castaneda*, 130 S. Ct. 1845 (2010), is more properly characterized as supplementing arguments raised in the earlier-filed and still-pending consolidated motion to dismiss.  At any rate, because briefing on Mr. Haynes's immunity argument will close well before supplemental argument on the pending consolidated motion, there is no danger of delay.  Even if this argument were considered "successive," rather than concurrent, courts routinely consider such motions unless unnecessary delay would result.  *See, e.g.*, *FTC v. Innovative Mktg., Inc.*, 654 F. Supp. 2d 378, 384 (D. Md. 2009) (successive motion predicated upon intervening decision did not delay proceedings) (collecting cases); *see also* 5C Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1384, at 479 (3d ed. 2004) ("[T]he objective of [Rule 12(g)] is to eliminate unnecessary delay at the pleading stage.").  Moreover, Mr. Haynes's motion arguably implicates this Court's subject matter jurisdiction, *see Pounds v. Dep't of Interior*, 9 F. App'x. 820 (10th Cir. 2001) (affirming 12(b)(1) dismissal based upon absolute immunity); *Coakley v. Welch*, 877 F.2d 304 (4th Cir. 1989) (referring to an absolute immunity defense as jurisdictional), which concededly would exempt it altogether from Rule 12(g).

by other *wrongful acts*, including intentional acts. It extends not just to lawyers, but also to *paralegals* and other *legal staff*. It applies not to a narrow category of claims but to *any* civil action, including constitutional tort actions like this one, as well as *proceedings by reason of the same subject matter*. And, it applies not only to legal services but to acts or omissions *in connection with* such services. *See* 10 U.S.C. § 1054(a).

Plaintiffs concede, as they must, that the statute is broad enough to encompass the alleged conduct upon which their claims against Mr. Haynes are based. *See* Opp. at 5 (noting the application of 10 U.S.C. § 1054 to Padilla's claims "is not expressly precluded by the text of the provision"). Nevertheless, Plaintiffs argue based upon Section 1054's title and legislative history that Congress intended a narrower meaning than is encompassed by the language it enacted into law. Plaintiffs' reliance on dicta (Opp. 7) suggesting that the title of a statute can shed light on ambiguous words or phrases in the text is misplaced because the text of the statute makes clear that there is no ambiguity as to the scope of the immunity conferred by Section 1054. Indeed, the Supreme Court recently held that with regard to identical language in Section 1054's predecessor, "[t]he breadth of the words 'exclusive' and 'any' supports this [broad] reading, as does the provision's inclusive reference to all civil proceedings arising out of 'the same subject-matter.'" *Hui*, 130 S. Ct. at 1851; *see id*. (explaining that Congress meant what it said in using "[l]anguage that broad"). Under the theory that broad language is ambiguous, Plaintiffs invite this Court to limit 1054's applicability to "suits by the recipients of legal services," thereby excluding from its scope legal services performed by the Department of Defense General Counsel (Opp. 5). There is no provision within the statutory text limiting its application as Plaintiffs suggest, and Plaintiffs do not argue to the contrary. Had Congress desired to limit

3

Section 1054's application to such circumstances, it readily could have employed language to accomplish that end.[2]

Moreover, the actual text of the statute negates Plaintiffs' attempt to create ambiguity where there is none. For example, the limitation of Section 1054 to legal malpractice actions would render unnecessary the terms "paralegal" and "other member of a legal staff," as legal malpractice actions are predicated upon the existence of an attorney-client relationship and cannot be brought against non-attorneys.[3] Similarly, while legal malpractice actions sound in negligence, *see Brown v. Theos*, 550 S.E.2d 304, 306 (S.C. 2001), Section 1054 immunizes Department of Defense attorneys more broadly for both negligent and wrongful acts. This includes intentional conduct that lies outside malpractice claims. *See Impulsora del Territorio Sur, S.A. v. Cecchini (In re Cecchini)*, 780 F.2d 1440, 1443 (9th Cir. 1986) (describing willful and malicious intentional torts as wrongful acts); *United States v. Praylou*, 208 F.2d 291, 293 (4th Cir. 1953) (describing the intentional invasion of rights as wrongful acts).[4] The inclusion of paralegals and staff members and conduct encompassing not merely negligent activities but any wrongful act or omission is inconsistent with the limitations the Plaintiffs urge this Court to read

---

[2] As has been pointed out by the Second Circuit, "[w]hen Congress has sought to limit immunity to medical malpractice claims it has done so explicitly." *Cuoco v. Moritsugu*, 222 F.3d 99, 108 (2d Cir. 2000) (construing 42 U.S.C. § 233 to apply to claims broader than professional malpractice).

[3] *See Palmer v. Westmeyer*, 549 N.E.2d 1202, 1209 (Ohio Ct. App. 1988) (per curiam) (noting that since a paralegal "is not an attorney, she cannot be charged with legal malpractice"); *Lyster v. Giancola* (*In re Estate of Divine*), 635 N.E.2d 581, 588 (Ill. App. Ct. 1994) (paralegals do not owe a fiduciary duty to clients).

[4] The phrase "negligent or wrongful act or omission" in Section 1054 is the same phrase Congress used in the earlier-enacted Federal Tort Claims Act (FTCA). *See* 28 U.S.C. § 1346(b)(1). This phrase necessarily incorporates intentional torts; otherwise the intentional tort exception to the FTCA, *see* 28 U.S.C. § 2680(h), would be superfluous.

into the statute. Accordingly, those limitations must be rejected.[5] *See Brown v. Gardner*, 513 U.S. 115, 118-20 (1994) (rejecting attempt to manufacture ambiguity of broad provision where narrower construction was contradicted by surrounding text).[6]

Even if they were proper interpretive sources, neither the title nor the legislative history advances Plaintiffs' cause. There is no question that legal malpractice is included within the scope of the statute. The sources and cases cited by Plaintiffs establish nothing more.[7] Moreover, the title ("Defense of certain suits arising out of legal malpractice"), upon which Plaintiffs' heavily rely, is consistent with Mr. Haynes's position. The title employs the qualifying language "arising out of," which connotes a broader application than Plaintiffs advance. The arising-out-of test is commonly used to denote any causal connection between the term modified and the injury. *See, e.g.*, *O'Leary v. Brown-Pacific-Maxon, Inc.*, 340 U.S. 504, 507 (1951); *U.S. Indus./Fed.Sheet Metal, Inc. v. Director, Dep't of Labor*, 455 U.S. 608, 615 (1982). In this case, the thrust of Plaintiffs' claims is their disagreement with the legal assessment that Mr. Padilla could be detained as an enemy combatant and that unlawful enemy

---

[5] Similarly, Plaintiffs' argument that Section 1054 extends only to claims that are "congruent" with legal malpractice (Opp. 9 n.3) conflicts with the statutory text that claims "in connection with" providing legal services are covered.

[6] Plaintiffs' authority is not to the contrary. *See Carter v. United States*, 530 U.S. 255, 266–67 (2000) (rejecting attempt to use title to narrow text of statute) (cited at Opp. 7); *see also Bhd. of R.R. Trainmen v. Baltim. & Ohio R.R.*, 331 U.S. 519, 528 (1947) (noting that a heading failing to refer to all matters written into the text is not unusual); *id.* at 528–29 ("[T]he title of a statute . . . cannot limit the plain meaning of the text.").

[7] In fact, none of the cases relied upon by Plaintiffs involve an assertion of immunity under Section 1054, and only one involves its application. *See Mossow ex rel. Mossow v. United States*, 987 F.2d 1365, 1366, 1370–71 (8th Cir. 1993) (cited at Opp. 9). And, contrary to Plaintiffs' suggestion, courts have interpreted analogous immunity statutes to encompass claims broader than malpractice. *See, e.g.*, *Cuoco*, 222 F.3d at 108; *Teresa T. v. Ragaglia*, 154 F. Supp. 2d 290 (D. Conn. 2001) (finding immunity under an analogous immunity statute for alleged failure to report suspected abuse).

combatants are not subject to the same standards of detention as might apply to criminal pretrial detainees. *See* Opp. 11, 13 (arguing that Mr. Haynes failed to comply with legal ethical standards). Plaintiffs' quarrel with such legal assessments has led them to sue a number of government lawyers. Such claims clearly *arise out of* allegations of legal malpractice, even if they are not malpractice claims *per se*.

And while Mr. Haynes did not breach any ethical duties (and we note that the Department of Justice concluded the same with respect to other government lawyers that Plaintiffs allege engaged in unethical conduct), Plaintiffs' reliance on legal ethical standards in this case confirms that the allegations against Mr. Haynes are in connection with his provision of legal services (and could be characterized as arising arise out of allegations of legal malpractice). The applicability of Section 1054 depends upon the function the defendant was performing, not the plaintiffs' characterization of the alleged conduct as heinous or illegal. As with other forms of immunity, it does not "make any difference with what denunciatory epithets the complaining party may characterize their conduct. If such epithets could confer jurisdiction, they would always be supplied in every variety of form." *Dow v. Johnson*, 100 U.S. 158, 163-66 (1880).

Plaintiffs acknowledge (Opp. 8) that one rationale underlying the statute is to insulate military lawyers who generally receive less pay than their counterparts in the private sector from suits that would require insurance. Once again, this supports Mr. Haynes's position because the rationale applies equally here, as the need for insurance coverage does not depend on the identity of the plaintiff.[8] Plaintiffs' own authorities establish that such third party suits against

---

[8] Plaintiffs' argue that Section 1054 was intended to cover "claims by soldiers" that, *inter alia*, "defense counsel in the Judge Advocate's Corps mishandled their criminal representation." (Opp. 6.) But because soldiers cannot bring such tort claims against military members (and could not do so in 1986 when Section 1054 was enacted), *see Feres v. United States*, 340 U.S.

6

government lawyers are not uncommon and predate the enactment of Section 1054. *See* Opp. 4–5, n.2; *see also* Legal Malpractice Insurance Guide § 2:6 (2011 ed.) (noting potential claimants against attorneys include non-clients). Congress is presumed to have been aware of such suits, and the operable text of 10 U.S.C. 1054 does not limit the immunity conferred by that provision to causes of action by clients alleging legal malpractice.[9]

Finally, Plaintiffs half-heartedly argue that their allegations against Mr. Haynes should be characterized as "policy making" not "legal services" (Opp. 3). The plain language of 10 U.S.C. § 1054 belies their argument. The scope of immunity conferred by 10 U.S.C. § 1054 extends to activities broader than the provision of legal advice and services. Congress provided immunity for any wrongful act or omission taken *in connection with* providing legal services or *by reason*

---

135 (1950); *Chappell v. Wallace*, 462 U.S. 296 (1983), Plaintiffs' view of the rationale underpinning Section 1054 is fundamentally flawed.

[9] Plaintiffs' unsupported suggestion (Opp. 8–9) that professional liability insurance for lawyers does not extend to suits by non-clients is incorrect. Coverage under such policies typically is not limited to suits by clients. *See, e.g.*, Brunswick Companies, Employed Lawyers Legal Malpractice Insurance, *available at* http://www.brunswickcompanies.com/pl-employed-lawyers.html (noting coverage available through Employed Lawyers Professional Liability Insurance plans includes coverage for claims by non-client third parties) (last visited Jan. 21, 2011); Chubb Group of Insurance Companies, Employed Lawyers Professional Liability (rev. Oct. 2008), *available at* http://www.chubb.com/businesses/csi/chubb848.pdf (same) (last visited Jan. 21, 2011); Earhart Leigh Associates, Inc., Employed Attorneys, *available at* http://professional-liability.com/att_employed.cfm (same) (last visited Jan. 21, 2011).

*of the same subject matter*.[10]  This would encompass the advice and judgments that Plaintiffs now seek to characterize as policy rather than law. [11]

Plaintiffs' complaint rests heavily on legal services provided by Mr. Haynes.  *See* Compl. ¶¶ 15 (noting Mr. Haynes's status as General Counsel), 48 (referencing the legal determination that the Geneva Conventions do not apply to the Taliban and *al Qaeda*), 49-50, 74, 77 (pertaining to the drafting and application of legal memoranda), 65–72 (relating to legal advice provided by Mr. Haynes to the Secretary), 73, 78 (regarding the formation and findings of a working group composed of Department lawyers).  Nevertheless, Plaintiffs argue that Mr. Haynes is ineligible for immunity because he was "not acting solely as a lawyer." (Opp. 3.)  But once again, Plaintiffs' attempt to limit the scope of Section 1054 is contradicted by its very terms, which expressly extend beyond lawyers to paralegals and other non-lawyer members of Department of Defense legal staffs.  Given that the provision is not limited to lawyers, it clearly cannot be limited to situations in which a person acts solely as a lawyer, as Plaintiffs argue.  Accordingly, Plaintiffs' argument that Mr. Haynes provided a combination of legal and policy advice is simply irrelevant to the applicability of Section 1054.  Moreover, any so-called policy judgment by Mr. Haynes would have coincided with his provision of legal services to the

---

[10] The phrase "in connection with" in particular is "undeniably broad in scope." *EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 569 (5th Cir. 1994) (quotation marks omitted); *see also Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006) (finding fraud "in connection with" a securities transaction to be met whenever such fraud "coincide[s]" with the transaction) (quotation marks omitted); *United States v. Salazar*, 542 F.3d 139, 147 (5th Cir. 2008) (noting the phrase is broad and expansive), *cert. denied*, 129 S. Ct. 1669 (2009).

[11] Plaintiffs argue that Mr. Haynes's construction would render superfluous the phrase "in connection with providing legal services" since the statute is already limited to actions taken within the scope of employment. (Opp. 2, 6.)  Not so.  Under the proper construction of Section 1054, for example, an accident involving an automobile driven by a military lawyer while on duty could be within the scope of employment but not legal services.  Conversely, an off-duty military lawyer's provision of legal services to a friend could be outside the scope of employment.

8

Department of Defense and would have been predicated upon a legal analysis that the proposed activities were lawful. It is that legal determination with which the Plaintiffs ultimately disagree. Plaintiffs cannot seek to hold Mr. Haynes liable for his advice by characterizing it as "policy" while failing to acknowledge that such advice is predicated upon and in connection with legal services.[12]

## II.     Plaintiffs' Allegations Fall Squarely Within the Scope of Duties and Employment of the General Counsel of the Department of Defense.

Section 1054 additionally requires that acts or omissions be taken while "acting within the scope of the person's duties or employment." 10 U. S. C. § 1054(a). This condition is met here. The statutory and regulatory duties of the General Counsel encompass the activities alleged by the Plaintiffs to give rise to their claims. Plaintiffs' allegations relating to Mr. Haynes centrally involve coordinating with other government lawyers on matters of interest to the Department of Defense and providing advice, guidance or recommendations relating to detention and interrogation procedures within DOD. *See* Mot. 7–9, 12. Such activities are within the scope of the General Counsel's duties as chief legal officer. *See* Mot. 11–12 (citing Department of Defense Directive 5145.01). The activities alleged by the Plaintiffs fall within the contours of these clearly defined duties, and Plaintiffs do not argue to the contrary.

---

[12] Any legal advice rendered by a lawyer necessarily has a broader advisory component, and attorney professional obligations recognize that in providing legal advice and services, a lawyer is often called upon to render broader moral or political advice beyond the narrow contours of whether a proposed course of action is legal. *See, e.g.*, District of Columbia Rules of Prof'l Conduct R. 2.1 (2007) ("In rendering advice, a lawyer may refer not only to law but to other considerations such as moral, economic, social, and political factors, that may be relevant to the client's situation."). Advice to pursue a certain policy could not be rendered without a determination that the proposed course of conduct first complies with the law. *See* District of Columbia Rules of Prof'l Conduct R. 1.2(e) (2007) (noting that a lawyer shall not counsel a client to engage in conduct known to be criminal). And, a lawyer's advice is not parsed to separate pure legal advice from broader moral and political advice; the entire communication is privileged. *United States v. United Shoe Mach. Corp.*, 89 F. Supp. 357, 359 (D. Mass. 1950). So, too, in this case.

Nevertheless, Plaintiffs argue that their allegations involve conduct outside the scope of employment, and, therefore, outside the protection of the statute. Plaintiffs' argument borders on the frivolous.[13] The D.C. Circuit previously decided this precise issue on indistinguishable facts. *See* Mot. 9 at n.4 (citing *Rasul v. Myers*, 563 F.3d 527, 528–29 & n.1 (D.C. Cir.) (per curiam) (holding allegations of abuse by military interrogators are within scope of employment), *cert. denied*, 130 S. Ct. 1013 (2009)). Plaintiffs' argument (Opp. 12–13) that the analysis is altered based upon the location of the alleged acts or the nationality of the plaintiffs has no support in law or logic. And even if such factors were pertinent to scope of employment, the effect of the Supreme Court's ruling in *Boumediene v. Bush* negates Plaintiffs' position that *Rasul* should be distinguished in this manner. *See* 553 U.S. 723, 754 (2008) (finding under the facts of that case that the United States "maintains *de facto* sovereignty" over Guantanamo Naval Base).

In the District of Columbia, scope of employment law is expansive enough "to embrace any intentional tort arising out of a dispute that was originally undertaken on the employer's behalf." *See Council on Am. Islamic Relations v. Ballenger*, 444 F.3d 659, 664 (D.C. Cir. 2006) (per curiam) (quoting *Weinberg v. Johnson*, 518 A.2d 985, 991 (D.C. 1986)). Allegations of misconduct, even if extreme and intentional, do not take the employee outside the scope of his or her employment so long as the employee's actions were motivated by the desire to serve the employer. *See, e.g.*, *Johnson v. Weinberg*, 434 A.2d 404, 408 (D.C. 1981); *Lyon v. Carey*, 533 F.2d 649, 654 (D.C. Cir. 1976). As set forth above, Plaintiffs' claims in relation to Mr. Haynes

---

[13] Plaintiffs refer throughout their response to legal conclusions as factual allegations. *See, e.g.,* Opp. 2–3 (characterizing defendants activities as conspiring to design, approve, and order illegal detention and purposefully misuse the law to facilitate torture). However, Plaintiffs' conclusory assertion that various defendants conspired with one another or that certain policies or activities were unlawful, violated the constitution, or constituted torture should be disregarded when evaluating the objective facts alleged in the complaint. The objective facts as to Mr. Haynes involve activities that would have been central to his duty to provide legal services as General Counsel.

are tied to the scope of Mr. Haynes's duties as General Counsel. Mr. Haynes was not performing those duties for his own private benefit. He performed those duties on behalf of the Department of Defense.[14] While Plaintiffs' characterization of the defendants' actions as "torture," "conspiracy" and other "serious crimes" has no merit, such characterization under the facts of this case is of no import to the scope of employment determination. *See Rasul*, 563 F.3d at 528–29.

---

[14] Plaintiffs' authorities (Opp. 10–11) are not to the contrary. *See Boykin v. Dist. of Columbia*, 484 A.2d 560, 563 (D.C. 1984) (sexual assault of blind and deaf 12-year old girl not direct outgrowth of employment); *Haddon v. United States*, 68 F.3d 1420, 1424 (D.C. Cir. 1995) (assault by co-employee not direct outgrowth of employment); *Weinberg v. Johnson*, 518 A.2d 985, 990 (D.C. 1986) (shooting of customer is direct outgrowth of employment); *see also* Restatement (Second) of Agency (1957) (stating that "[a]n act may be within the scope of employment although consciously criminal or tortuous"). These authorities reflect that actions that are the "direct outgrowth of employment" are within scope. Clearly, advice on the detention and interrogation of enemy combatants by the Department of Defense General Counsel is a direct outgrowth of his employment. Nor is it unforeseeable that defense officials could be called upon to make difficult judgments in time of war, about which enemy combatants might complain.

## CONCLUSION

For the foregoing reasons and the reasons set forth in Mr. Haynes's initial Motion to Dismiss, the Court should dismiss Mr. Haynes from this case.

Respectfully Submitted,

By: /s/ William C. Cleveland
BUIST MOORE SMYTHE MCGEE, PA
William C. Cleveland
Five Exchange Street
P.O. Box 999
Charleston, SC 29402
Telephone:    (843) 720-4606
Facsimile:     (843) 723-7398

WILLIAMS & CONNOLLY LLP
F. Greg Bowman (*pro hac vice*)
Edward C. Reddington (*pro hac vice*)
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone:    (202) 434-5000
Facsimile:     (202) 434-5029

*Attorneys for Defendant William J. Haynes II*

Dated: January 21, 2011